# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TONIA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-CV-02496-DDC-GLR |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TYSON FOODS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Tyson Foods, Inc. ("Tyson"), by its attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure and D. Kan. Rule 56.1, hereby submits this Memorandum in Support of its Motion for Summary Judgment.

## INTRODUCTION

Plaintiff, a current Tyson employee, claims that a co-worker subjected her to sexually harassing conduct during three shifts on September 9, 10, and 11, 2015. Despite having been trained on Tyson's anti-harassment policy, which provides a toll-free reporting hotline and multiple other reporting avenues, Plaintiff did not report the alleged harassment to Tyson until September 12, 2015. Upon Plaintiff's report on that date, Tyson took prompt and remedial action that proved to be effective, including:

- Immediately commencing an investigation and suspending the alleged harasser without pay;
- Issuing the alleged harasser a Final Warning;
- Instructing the alleged harasser to have no further contact with Plaintiff;
- Retraining the alleged harasser on its anti-harassment policy;
- Temporarily moving the alleged harasser to a different area of Plaintiff's department pending permanent transfer to another department, and
- Transferring the alleged harasser outside of Plaintiff's department altogether.

This prompt and corrective action was not only reasonable, but effective, as Plaintiff testified that the alleged harassment stopped as of September 12, 2015 when she first reported it to Tyson. Plaintiff nonetheless claims that Tyson failed to adequately remedy or address this alleged harassment. Notwithstanding that Plaintiff remains employed by Tyson, has had no change in her status, pay, benefits or job responsibilities (and is making no claim for past or future lost wages or benefits), she also claims that Tyson subjected her to numerous acts of retaliation.

The material facts are undisputed and show that all of Plaintiff's claims fail as a matter of law and that summary judgment for Tyson is warranted:

1       Plaintiff's sexual harassment claim fails as a matter of law because she cannot establish that Tyson knew or should have known of the alleged sexual harassment until she first reported it to a supervisor, nor can she establish that Tyson failed to adequately remedy or address the alleged harassment.

2       Plaintiff's retaliation claims fail because she cannot show the requisite causal connection between her protected activity and any actionable adverse employment action.

Accordingly, all of Plaintiff's claims fail as a matter of law and must be summarily dismissed.

## TYSON'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS[1]

**I.      Plaintiff's Employment and Job Duties.**

1       Plaintiff became employed by The Hillshire Brands Company as a Production Packer at its Kansas City, Kansas facility on or about June 6, 2014. Pretrial Order, §2(a)(1).

2       Tyson purchased The Hillshire Brands Company on August 28, 2014. *Id.* at §2(a)(2).

---

[1]  Tyson accepts many of Plaintiff's allegations as uncontroverted for purposes of this Motion only, and reserves the right to dispute any and all of these facts in future proceedings, if any.

3 Tyson produces fresh and cooked chicken, beef and pork products in facilities throughout the country. *Id.* at §2(a)(3).

4 Plaintiff is currently employed by Tyson and works at its Kansas City, Kansas facility. Since beginning her employment with The Hillshire Brands Company on or about June 6, 2014, Plaintiff has continued to work as a Production Packer on second shift. *Id.* at §2(a)(4); Deposition of Plaintiff ("Pl. Dep."), attached hereto as **Exhibit 1**, at 10:6-8, 11:18-22, 12:25-13:4.

5 Plaintiff's job duties include, among other things, performing perfect packaging checks and identifying material quality defects and taking appropriate action. Ex. 1, Pl. Dep. at 15:4-19, 16:23-2.

6 Plaintiff and some other Production Packers have also performed Quality Assurance ("QA") Float duties, which involve running certain quality checks on Tyson's product and then documenting that those checks have been performed. Ex. 1, Pl. Dep. at 10:24-11:5, 45:7-21. These QA Float duties are incorporated into the job responsibilities of the Production Packer position. *Id.* at 19:6-10.

7 Plaintiff acknowledged she was trained on the proper way to handle packaging material verification at shift startup and changeovers, processes relating to the QA float duties, concepts and processes of the changeover audit form, processes of performing net weight checks, and concepts and processes of the housekeeping checklist. Ex. 1, Pl. Dep. at 129:23-130:4, 131:23-132:2, 132:9-14, 133:13-18, 133:24-134:6; Plaintiff's Training Sign-Off Forms (Ex. 13-17 of Pl. Dep.), attached hereto as **Exhibit 2**. Plaintiff agreed to strictly follow the process and procedures covered in these trainings. Ex. 1, Pl. Dep. at 130:24-131:2, 132:3-8, 133:8-12, 133:19-23, 134:7-10; Ex. 2, Plaintiff's Training Sign-Off Forms.

## II.  Tyson's Efforts to Prevent Discrimination and Harassment in the Workplace.

8    Throughout Plaintiff's employment, the Kansas City, Kansas facility has maintained an employee handbook applicable to all employees at the facility. Deposition of Nina Erickson ("Erickson Dep."), attached hereto as **Exhibit 3**, at 11:7-15, 11:20-12:1; Deposition of Simone Clifford ("Clifford Dep."), attached hereto as **Exhibit 4**, at 16:14-22; Employee Handbook (Ex. 1 of Clifford Dep.), attached hereto as **Exhibit 5**. This handbook includes a policy titled Prevention of Sexual and Other Unlawful Harassment and Discrimination. Ex. 3, Erickson Dep., at 12:2-11; Ex. 5, Employee Handbook at Bates D000282.

9    After Tyson purchased The Hillshire Brands Company, it supplemented this handbook policy with its Harassment and Discrimination Policy. Tyson implemented its Harassment and Discrimination Policy at the Kansas City, KS facility in March 2015. Ex. 3, Erickson Dep. at 12:12-17, 13:8-15, 103:24-104:8; Tyson Harassment and Discrimination Policy (Ex. 64 to Erickson Dep.), attached hereto as **Exhibit 6**.

10    Tyson's Harassment and Discrimination Policy specifically prohibits unlawful harassment and discrimination based on sex, including sexual harassment and hostile work environment harassment. Ex. 6, Tyson Harassment and Discrimination Policy.

11    This Policy further requires any Tyson Team Member who witnesses, experiences, and/or learns about harassment or discrimination to immediately report it. *Id.*

12    Under this Policy, Tyson Team Members have multiple avenues by which to report unlawful harassment and/or discrimination, including the Team Member's:

- Supervisor;
- Plant or Facility Manager;
- General or Production Manager;
- Plant HR Manager;
- Assistant Plant HR Manager;
- Shift HR Manager;

- Complex HR Manager;
- Assistant Complex HR Manager;
- Director HR Operations Manager;
- The Employment Compliance Department (by toll-free number), or
- 24 Hour Tell Tyson First Line (by toll-free number).

*Id.*

13     This Policy provides that, where unlawful harassment is found to have occurred, appropriate disciplinary action will be taken. *Id.* It further provides that, depending on the seriousness of the offense, or repetition of a prior offense, one of the following disciplinary actions will be taken:

- Written Warning for the offending Team Member's personnel file
- Suspend, and file record
- Transfer and/or demotion
- Discharge

*Id.*

14     The Policy also prohibits retaliation against those who report harassment and/or discrimination. *Id.*

15     Plaintiff received training on and a copy of this Policy when Tyson implemented it at the Kansas City, Kansas facility in March 2015. Plaintiff certified that she understood this Policy and agreed to comply with it. Ex. 1, Pl. Dep. at 50:5-24; Training Acknowledgment Form (Ex. 4 to Pl. Dep.), attached hereto as **Exhibit 7**; Ex. 4, Clifford Dep. at 37:3-16.

16     After implementing its Harassment and Discrimination Policy at its Kansas City, Kansas facility in March 2015, Tyson began providing this Policy to each facility Team Member at the time of hire and covering this Policy during Team Member orientation sessions. Tyson has also provided annual training on this Policy to its Kansas City, Kansas Team Members. Ex. 3, Erickson Dep. at 104:9-23.

17      Tyson Team Member Anthony Richardson received training on and a copy of this Policy when he was hired at the Kansas City, Kansas facility in June 2015. Deposition of Anthony Richardson ("Richardson Dep."), attached hereto as **Exhibit 8**, at 72:3-19.

## III.     Plaintiff's Allegations of Sexual Harassment by Co-Worker Anthony Richardson.

18      On September 9, 2015, Mr. Richardson began training on Plaintiff's line, at which time Plaintiff alleges that he began subjecting her to sexually harassing conduct over the course of their shifts together on September 9, 10 and 11, 2015.[2] Ex. 1, Pl. Dep. at 57:9-11; Plaintiff's Statement (Ex. 5 to Pl. Dep.), attached hereto as **Exhibit 9**.

19      Mr. Richardson is an hourly co-worker who had no supervisory or managerial authority over Plaintiff. Ex. 1, Pl. Dep. at 58:6-14.

20      Plaintiff claims that Mr. Richardson subjected her to the following conduct on September 9, 2015:

- He asked if she had a boyfriend and, when Plaintiff responded that she was getting married, Mr. Richardson said three times that Plaintiff's boyfriend was lucky.
- He asked if she was looking for a stripper and Plaintiff said no. He told Plaintiff that he strips in St. Louis.
- He made a noise saying "dang, Tonia, come here." Plaintiff asked what he wanted and Mr. Richardson said "when you touched me." Plaintiff said "when did I touch you," to which Mr. Richardson responded "when you moved me out of your way, that felt good. My wife's never touched me like that."
- He bumped up against Plaintiff, reached over her and kind of rubbed on the side of her breast.[3]

Ex. 1, Pl. Dep. at 58:20-61:10; Ex. 9, Plaintiff's Statement.

---

[2]  Plaintiff did not have any interactions or problems with Mr. Richardson prior to September 9, 2015. Ex. 1, Pl. Dep. at 57:12-58:1.

[3]  Plaintiff did not include this allegation in her written statement, and does not know why she did not do so. Ex. 1, Pl. Dep. at 61:11-20.

21     On September 9, 2015, Plaintiff talked with Team Lead Dejuana Stallings about Mr. Richardson's conduct, but did not ask Ms. Stallings to do anything about it. Ex. 1, Pl. Dep. at 62:17-63:19.

22     Ms. Stallings and other Team Leads at Tyson's Kansas City, Kansas facility are hourly employees who assist supervisors with running the production line. Ex. 3, Erickson Dep. at 56:3-13. Like Plaintiff, these Team Leads perform the Production Packer role. Ex. 1, Pl. Dep. at 22:17-19.

23     The Team Leads are not Plaintiff's supervisors and do not have any authority to discipline Plaintiff. *Id.* at 23:10-12, 24:15-18. The Team Leads had no authority to hire, fire, or discipline employees. Ex. 3, Erickson Dep. at 105:1-16.

24     While Tyson supervisors have heightened responsibilities under Tyson's Harassment and Discrimination Policy, the Team Leads have no greater responsibility than any other hourly Tyson Team Member to report harassment. Ex. 3, Erickson Dep. at 105:17-106:20.

25     Plaintiff claims that Mr. Richardson subjected her to the following conduct on September 10, 2015:

- He asked what Plaintiff thought about what he said about stripping; Plaintiff said she wasn't interested and did not want any part of that.
- He told Plaintiff that he gave co-worker Kim Cobb some pictures to give to Plaintiff and that another co-worker could see them but he did not want a supervisor to see them.
- He told Plaintiff that she was "probably not ready for these pictures."

Ex. 1, Pl. Dep. at 64:8-65:17, 70:7-11; Ex. 9, Plaintiff's Statement.

26     On September 10, 2015, Plaintiff advised Ms. Stallings that Mr. Richardson was doing the same thing he did the day before and mentioned something about some pictures. Ex. 1, Pl. Dep. at 65:18-66:15; Ex. 9, Plaintiff's Statement.

27      In response, Ms. Stallings told Plaintiff she would talk with another Team Lead, Jun Penn, who then came to speak with Plaintiff and asked her what happened. Ex. 1, Pl. Dep. at 66:2-14, 67:14-18; Ex. 9, Plaintiff's Statement.

28      Mr. Penn offered to talk with Mr. Richardson, but Plaintiff asked Mr. Penn not to talk with Mr. Richardson because maybe Mr. Richardson got the hint. Ex. 1, Pl. Dep. at 67:19-25; Ex. 9, Plaintiff's Statement.

29      Plaintiff did not go "upstairs" to report Mr. Richardson's alleged harassment that day because she did not want him to lose his job and wanted to give him a chance to back off before reporting his conduct. Ex. 1, Pl. Dep. at 68:13-69:16; Ex. 9, Plaintiff's Statement.

30      Plaintiff claims that Mr. Richardson subjected her to the following conduct on September 11, 2015:

- He made comments about Plaintiff talking with a male co-worker, said Plaintiff reminded him of his wife, that he and his wife worked together and she would talk and laugh with other men but not with him, and that's how Plaintiff was acting.
- He said if he was her husband he would be upset.
- He followed her around making "huh "huh" noises every time Plaintiff would talk with a male co-worker.
- He said she looked good outside her work clothes.
- He sent her a Facebook friend request at 2:30 a.m.

Ex. 1, Pl. Dep. at 70:12-71:23, 72:6-11; Ex. 9, Plaintiff's Statement.

31      While in the locker room after Plaintiff's shift on September 11, 2015, Ms. Cobb showed Plaintiff and other hourly Team Members nude photographs that Mr. Richardson had sent to Ms. Cobb. Ex. 1, Pl. Dep. at 73:13-75:19.

## IV. Plaintiff's Report of Harassment to Tyson Management and Tyson's Prompt, Corrective Action in Response.

32      Plaintiff did not report Mr. Richardson's alleged sexually harassing conduct to any Tyson supervisor until Saturday, September 12, 2015, when she made a report to supervisor Marcus Alexander. Ex. 1, Pl. Dep. at 87:10-24.

33      Tyson maintains an Ethics Advantage file that reflects actions it took in response to Plaintiff's report about Mr. Richardson and contains information gathered during its investigation into this report. Ex. 3, Erickson Dep. at 106:21-107:20. This file includes a five page report that accurately summarizes actions Tyson took in response to Plaintiff's report. *Id.*; Ethics Advantage File Summary (Ex. 73 to Erickson Dep.), attached hereto as **Exhibit 10**, at Bates D000846-850.

34      Upon receipt of Plaintiff's report against Mr. Richardson, Mr. Alexander alerted Value Stream Manager Nathan Pease, who called the facility's Human Resources Manager, Simone Clifford, at home and advised her of Plaintiff's report. Ex. 1, Pl. Dep. at 90:2-17, 96:14-22; Ex. 4, Clifford Dep. at 32:18-33:22; 36:22-37:2.

35      Mr. Pease interviewed Plaintiff and obtained from Plaintiff a written statement of Mr. Richardson's alleged harassing conduct. Ex. 4, Clifford Dep. at 34:1-7; Record of Plaintiff's Interview (Ex. 6 to Clifford Dep.), attached hereto as **Exhibit 11**; Ex. 1, Pl. Dep. at 53:19-54:7, 92:6-93:9;  Ex. 9, Plaintiff's Statement.

36      The purpose of Plaintiff writing this statement was to explain to Tyson her report of sexual harassment by Mr. Richardson. Ex. 1, Pl. Dep. at 54:8-13. At the time Plaintiff wrote this statement, she believed it was important to give an accurate, thorough and complete description of the harassment she claims to have experienced by Mr. Richardson. *Id.* at 54:14-25.

Plaintiff's written statement contains an accurate description of the alleged harassment she experienced by Mr. Richardson. *Id.* at 55:1-5.

37    Pursuant to Ms. Clifford's guidance, Tyson management obtained a written statement from Mr. Richardson and suspended him for the day without pay pending further investigation. Ex. 10, Ethics Advantage File Summary at Bates D000849; Ex. 4, Clifford Dep. at 34:1-7; Richardson Statement (Ex. 8 to Clifford Dep.), attached hereto as **Exhibit 12**; Ex. 8, Richardson Dep. at 73:5-74:3.

38    Tyson management also obtained written statements from Ms. Stallings, Mr. Penn, and the Team Members on duty who viewed the pictures of Mr. Richardson in the locker room. Ex. 10, Ethics Advantage File Summary at Bates D000849; Ex. 4, Clifford Dep. at 34:13-35-3; Team Member Statements (Ex. 9, 10, 12, 14 and 16 to Clifford Dep.), attached hereto as **Exhibit 13**.

39    Prior to Plaintiff's complaint about Mr. Richardson, Tyson had not received any complaints against Mr. Richardson and had not issued him any discipline. Ex. 4, Clifford Dep. at 40:4-12, 100:24-101:2.

40    Based on Ms. Clifford's review of the statements obtained on Saturday, September 12, 2015, she determined that Plaintiff's complaint was substantiated and that she had sufficient information to take action against Mr. Richardson. Ex. 4, Clifford Dep. at 122:16-123:12, 180:14-16.

41    Thus, when Mr. Richardson returned to work on September 14, 2015, Ms. Clifford issued Mr. Richardson a Level 3 Final Warning with a one-day suspension. Ex. 4, Clifford Dep. at 93:9-16; Richardson Final Warning (Ex. 21 to Clifford Dep.), attached hereto as

**Exhibit 14**; Ex. 8, Richardson Dep. at 74:23-76:21. Mr. Richardson was issued this Level 3 Final Warning based on the severity of his conduct. Ex. 4, Clifford Dep. at 97:5-8.

42      Ms. Clifford also reviewed with Mr. Richardson Tyson's Harassment and Discrimination Policy, told him to avoid all contact with Plaintiff, and advised that he would be temporarily moved to a different area of Plaintiff's department pending permanent reassignment to a different department. Ex. 8, Richardson Dep. at 72:3-11, 75:7-11; Richardson Training Acknowledgment Form (Ex. 58 to Richardson Dep.), attached hereto as **Exhibit 15**.

43      Mr. Richardson's Level 3 Final Warning states that he would be reassigned permanently to another department. Ex. 14, Richardson Final Warning; Ex. 8, Richardson Dep. at 77:7-10.

44      Mr. Richardson was temporarily moved to a different area of Plaintiff's department, the mezzanine, which is on a different level than where Plaintiff worked. Ex. 4, Clifford Dep. at 137:24-138:8; Ex. 8, Richardson Dep. at 78:16-79:4; Ex. 3, Erickson Dep. at 64:11-23; Ex. 10, Ethics Advantage File Summary at Bates D000849.

45      Mr. Richardson understood that his move to the mezzanine was a temporary move pending his permanent transfer to another department. Ex. 8, Richardson Dep. at 77:24-78:21.

46      Ms. Clifford subsequently issued Ms. Cobb a Level 1 Documented Reminder for showing the inappropriate photographs of Mr. Richardson to other Team Members and reviewed Tyson's Harassment and Discrimination Policy with her. Ex. 4, Clifford Dep. at 82:14-23; Cobb Level 1 Documented Reminder (Ex. 18 to Clifford Dep.), attached hereto as **Exhibit 16**; Ex. 10, Ethics Advantage File Summary at Bates D000850.

47      On or about September 14, 2015, Ms. Clifford spoke with Plaintiff and advised that she was following up on Plaintiff's complaint. Ex. 1, Pl. Dep. at 108:11-16, 109:13-16.

48      Plaintiff claims that, during this conversation, Ms. Clifford spoke to Plaintiff in an intimidating, threatening manner, accusing Plaintiff of victimizing Mr. Richardson for reporting her concerns to her Team Leads and to two supervisors. First Am. Compl. at ¶50; Ex. 1, Pl. Dep. at 108:4-109:7.

49      Plaintiff further claims that Ms. Clifford threatened to write-up Plaintiff. First Am. Compl. at ¶50; Ex. 1, Pl. Dep. at 108:4-109:2.

50      Plaintiff does not know of any write-up or discipline she received in connection with her report against Mr. Richardson. Ex. 1, Pl. Dep. at 111:10-13. Plaintiff was never written up for making Mr. Richardson a victim. Ex. 1, Pl. Dep. at 118:3-6.

51      On September 25, 2015, Plaintiff reported to Ms. Clifford for the first time that Mr. Richardson was staring at her in team huddles. Ex. 1, Pl. Dep. at 115:16-116:7, 116:19-21. Plaintiff made this report to Ms. Clifford by text message. Text Message (Ex. 25 to Clifford Dep.), attached hereto as **Exhibit 17**; Ex. 4, Clifford Dep. at 135:24-136:9.

52      In response, Ms. Clifford spoke with Alyssa Rollo, who Plaintiff identified as having seen Mr. Richardson staring at her. Ex. 4, Clifford Dep. at 109:4-25, 136:10-18.

53      Ms. Clifford also finalized arrangements to permanently transfer Mr. Richardson to the warehouse — a different department in another area of the facility. Ex. 4, Clifford Dep. at 110:17-111:5; Ex. 8, Richardson Dep. at 68:13-16, 79:5-8. Mr. Richardson began training on first shift in that position beginning on September 26, 2015 and was permanently transferred on or about October 3, 2015.[4] Ex. 4, Clifford Dep. at 115:7-13, 119:11-15; Ex. 3, Erickson Dep. at 64:24-25, 65:15-66:12; Ex. 10, Ethics Advantage File Summary at Bates D000849-850.

---

[4]   Mr. Richardson remained on first shift in the warehouse until May 2016, at which time he began working second shift in the warehouse. Ex. 8, Richardson Dep. at 65:1-11, 65:21-25, 79:9-15.

54      Tyson subsequently conducted a facility-wide re-training on its Harassment and Discrimination Policy at the Kansas City, Kansas facility. Ex. 1, Pl. Dep. at 128:5-18; Ex. 10, Ethics Advantage File Summary at Bates D000849-850.

55      The sexually harassing conduct Mr. Richardson engaged in toward Plaintiff was limited to his conduct on September 9, 10, and 11, 2015. Ex. 1, Pl. Dep. at 88:7-12.

56      As of the time Plaintiff reported Mr. Richardson's conduct to a supervisor on September 12, 2015, Mr. Richardson stopped sexually harassing Plaintiff. Ex. 1, Pl. Dep. at 105:17-21.

**V.      The Kansas City, Kansas Facility's Progressive Corrective Action Policy.**

57      The employee handbook applicable to Team Members at Tyson's Kansas City, Kansas facility includes a Progressive Corrective Action policy. Pursuant to this Policy, progressive corrective action may involve up to five levels: verbal reminder, Level One Documented Reminder (to remain active for three months), Level Two Written Reminder (to remain active for six months), Level Three Final Warning (to remain active for nine months) and Termination of Employment. Ex. 3, Erickson Dep. at 23:7-23, 24:16-21; Progressive Corrective Action Policy (Ex. 2 to Clifford Dep.), attached hereto as **Exhibit 18**, at Bates D000305-306.

58      Under this policy, aggravating and mitigating circumstances will be considered when administering corrective actions and decisions regarding corrective action can only be made on a case by case basis. Ex. 18, Progressive Corrective Action Policy at Bates D000306.

59      If an employee on an active Level Three Final Warning receives another written warning within nine months, this does not necessarily mean that his or her employment will be terminated. Rather, whether the employee is terminated can depend on the severity of the employee's infraction. Ex. 4, Clifford Dep. at 96:13-97:4.

**VI.     Plaintiff's Corrective Actions Prior to Reporting Alleged Harassment by Mr. Richardson.**

60      Plaintiff received discipline prior to registering her complaint about Mr. Richardson. Ex. 1, Pl. Dep. at 171:23-172:1.

61      Prior to making her complaint about Mr. Richardson, Plaintiff was suspended for violating policy on May 11, 2015 when she failed to perform required metal detector checks on food product and falsely documented that she had run such checks. Ex. 1, Pl. Dep. at 135:2-16, 140:17-141:8; Ex. 4, Clifford Dep. 152:1-17; Corrective Action Effective May 11, 2015 (Ex. 37 to Clifford Dep.), attached hereto as **Exhibit 19**. Plaintiff's violation resulted in 50 pallets of product being placed on hold to be tested for metal. Ex. 19, Corrective Action Effective May 11, 2015.

62      Prior to making her complaint about Mr. Richardson, Plaintiff and two co-workers were given verbal reminders for failing to comply with their end of shift responsibilities. Ex. 4, Clifford Dep. at 157:14-23; Corrective Action Effective September 1, 2015 (Ex. 38 to Clifford Dep.), attached hereto as **Exhibit 20**; Corrective Actions for Kim Cobb and Carrie Walker, attached hereto as **Exhibit 21**.

63      Tyson has issued corrective action to at least four other employees at its Kansas City, Kansas facility for committing violations similar to the violation for which Plaintiff, Ms. Walker and Ms. Cobb were issued Documented Conversations Effective September 1, 2015, including:

      a.     Production Technician Chris Brownwell, issued Level 1 Documented Reminder effective September 30, 2016;

      b.     Production Technician Terrance Hudson, issued Level 1 Documented Reminder effective October 17, 2016;

      c.     Production Technician Perry Monk, issued Level 2 Written Reminder effective September 29, 2016, and

      d.     Production Technician Enoch Ragsdale, issued Documented Conversation effective October 17, 2016.

Corrective Actions for Brownwell, Hudson, Monk and Ragsdale, attached hereto as **Exhibit 22**.

**VII.    Plaintiff's Policy Violation on October 23, 2015.**

64      On October 25, 2015, Tyson Food Safety and Quality Assurance Supervisor Crystal Smith proposed that a corrective action be issued to Plaintiff as a result of an infraction Plaintiff committed on October 23, 2015. Specifically, Plaintiff failed to follow the changeover procedure and used cardstock samples with an incorrect code date, resulting in 42 cases of product that had to be re-worked. Ex. 4, Clifford Dep. at 146:11-24; Oct. 25, 2015 Email and Proposed Corrective Action (Ex. 36 to Clifford Dep.), attached hereto as **Exhibit 23**.

65      Ms. Clifford notified her supervisor, Group Human Resources Manager Nina Erickson, of this proposed corrective action and the fact that Plaintiff was on an active Level 3 Final Warning from May 2015. Ex. 4, Clifford Dep. at 146:25-147:5, 147:19-148:3.

66      Ms. Erickson asked to review the corrective actions in Plaintiff's file in order to determine whether Plaintiff's violation warranted termination. Ex. 4, Clifford Dep. at 148:4-149:9, 152:1-7, 156:24-157:2; Ex. 23, Oct. 25, 2015 Email and Proposed Corrective Action; Ex. 3, Erickson Dep. at 81:3-15.

67      In reviewing Plaintiff's file for prior corrective actions, Ms. Clifford realized that Plaintiff had never signed the May 11, 2015 Level 3 Final Warning or the September 1, 2015 Documented Conversation and therefore obtained Plaintiff's signature on these corrective actions on October 26, 2015. Ex. 4, Clifford Dep. at 154:22-155:9, 159:1-3, 160:7-19; Ex. 3, Erickson Dep. at 84:1-25, 85:10-20.

68      Tyson ultimately decided against issuing Plaintiff any corrective action for her October 23, 2015 infraction. Ex. 4, Clifford Dep. at 149:15-19.

**VIII. Plaintiff's Subsequent Policy Violations and Corresponding Corrective Actions.**

69      On February 2, 2016, Plaintiff violated company policy by using incorrect cardstock samples and falsely documenting that she had collected the correct cardstock. Ex. 4, Clifford Dep. at 160:21-161:3; Corrective Action Effective February 2, 2016 (Ex. 39 to Clifford Dep.) attached hereto as **Exhibit 24**; Ex. 1, Plaintiff Dep. at 148:8-16.

70      Plaintiff acknowledges that she was not concentrating like she should have been and should have probably paid more attention. Ex. 1, Plaintiff Dep. at 149:20-150:7.

71      Plaintiff's violation resulted in 14 pallets of product being placed on hold. Ex. 24, Corrective Action Effective February 2, 2016.

72      Though Plaintiff's Level 3 Final Warning from May 11, 2015 was still active, Tyson did not terminate Plaintiff's employment. Ex. 1, Pl. Dep. at 151:5-16, 153:5-8, 153:18-20. Rather, Tyson issued Plaintiff a Level 2 Written Reminder. Ex. 1, Pl. Dep. at 146:22-147:24; Ex. 24, Corrective Action Effective February 2, 2016.

73      Tyson has issued Level 2 Written Reminder corrective actions to at least two other employees at its Kansas City, Kansas facility for engaging in similar violations. Effective January 27, 2016, another employee in Plaintiff's department, Jason Ellingburg, was also issued a Level 2 Written Reminder for a similar policy violation that resulted in 15 pallets of product being placed on hold. Effective December 19, 2016, Production Technician Mindy Tschudi was also issued a Level 2 Written Reminder for a similar policy violation that resulted in more than four pallets of product being placed on hold. Corrective Actions for Ellingburg and Tschudi, attached hereto as **Exhibit 25**.

74      On April 18, 2016, Plaintiff was absent from the production floor for an unauthorized period of time. Ex. 4, Clifford Dep. at 162:18-163:2; Corrective Action Effective April 22, 2016 (Ex. 41 to Clifford Dep.), attached hereto as **Exhibit 26**.

75      Tyson's review of time records and security footage from Plaintiff's shift that day

revealed that Plaintiff left the production floor at 6:36 pm and did not return until 7:26 pm,

thereby exceeding her authorized 30 minute break time by 20 minutes. Ex. 26, Corrective Action

Effective April 22, 2016.

76      As Plaintiff's Level 2 Written Reminder from February 2, 2016 was still active,

Tyson issued Plaintiff a Level 3 Final Warning for this infraction. Ex. 25, Corrective Action

Effective April 22, 2016; Ex. 1, Pl. Dep. at 155:10-24.

77      Tyson has issued corrective actions to at least 26 other employees at its Kansas

City, Kansas facility for taking unauthorized extended breaks, including:

    a.    RTE Production Technician Rodney Alexander, issued Level 1 Documented Reminder effective January 17, 2017;

    b.    Production Technician Chris Brownwell, issued Documented Conversation effective August 29, 2016;

    c.    RTE Packer Brandon Caston, issued Documented Conversation effective July 21, 2016;

    d.    Production Technician Christopher Cook, issued Documented Conversation effective November 8, 2016;

    e.    RTE Lead Tyrone Freeman, issued Level 2 Written Reminder effective September 21, 2016;

    f.    Production Technician Andrew Hardy, issued Documented Conversation effective May 6, 2016;

    g.    RTE Packer Carla Harris, issued Documented Conversation effective April 7, 2016;

    h.    Production Technician Ryan Hullum, issued Level 1 Documented Reminder effective April 12, 2016;

    i.    RTE Packer James Hunter, issued Documented Conversation effective March 4, 2016;

    j.    RTE Packer Ted Infranca, issued Level 1 Documented Reminder effective January 27, 2016 and Level 2 Written Reminder effective April 18, 2016;

    k.    Production Technician Brandon Jones, issued Level 2 Written Reminder effective June 20, 2016;

    l.    Packer Richard Jones, issued Level 1 Documented Reminder effective January 13, 2017;

    m.    Production Technician Sourisack Keodara, issued Level 1 Documented Reminder effective January 28, 2016;

    n.    RTE Packer Errin King, issued Documented Conversation effective January 27, 2016;

o.    RTE Packer Christopher Kirby, issued Documented Conversation effective January 27, 2016;

p.    RTE Packer Gary Knott, issued Documented Conversation effective January 21, 2016;

q.    Production Technician Lorenzo McCain, issued Level 2 Written Reminder effective January 16, 2017;

r.    RTE Packer Melton McIntosh, issued Level 1 Documented Reminder effective February 2, 2016;

s.    Production Technician Perry Monk, issued Documented Conversation effective May 23, 2016;

t.    RTE Packer Craig Newton, issued Documented Conversation effective July 21, 2016;

u.    RTE Packer Ed Richmond, issued Level 3 Final Warning effective April 18, 2016 and Level 3 Final Warning effective May 19, 2016;

v.    Production Technician Daniel Rivera, issued Level 1 Documented Reminder effective May 23, 2016;

w.    Production Technician Geronie Sanford, issued Level 1 Documented Reminder effective January 28, 2016;

x.    RTE Lead Keith Todd, issued Level 1 Documented Reminder effective September 21, 2016;

y.    RTE Packer Carrie Walker, issued Documented Conversation effective March 1, 2016 and Level 1 Documented Reminder effective May 19, 2016, and

z.    Production Technician William Young, issued Documented Conversation effective December 29, 2016.

Corrective Actions for Unauthorized Extended Breaks, attached hereto as **Exhibit 27**.

78    On October 10, 2016, Plaintiff was issued a Documented Conversation corrective action for failing to wear her safety glasses on the production floor. Ex. 4, Clifford Dep. at 167:13-22; Corrective Action Effective October 10, 2016 (Ex. 43 to Clifford Dep.), attached hereto as **Exhibit 28**.

## IX.    Plaintiff's EEOC Charges and Lawsuit.

79    On October 2, 2015, Plaintiff filed with the EEOC a Charge of Discrimination against The Hillshire Brands Company, checking the boxes for discrimination based on sex and retaliation beginning on September 9, 2015. The EEOC assigned this Charge number 563-2016-00031 and later amended this Charge to add Defendant as a Respondent. Pretrial Order, § 2(a)(6); Plaintiff's Charge of Discrimination, Ex. B to Pl. First Am. Compl. (ECF 15).

80     On April 20, 2016, the EEOC mailed Plaintiff a Notice of Right to Sue for Charge number 563-2016-00031. Pretrial Order, § 2(a)(7).

81     On July 14, 2016, Plaintiff filed with the EEOC a second Charge of Discrimination against Defendant, checking the boxes for discrimination based on sex and retaliation through April 30, 2016. The EEOC assigned the Charge number 563-2016-01790. *Id.* at § 2(a)(9); Plaintiff's Charge of Discrimination, Ex. B to Pl. First Am. Compl. (ECF 15).

82     The EEOC issued Plaintiff a Notice of Right to Sue on August 3, 2016. Pretrial Order, § 2(a)(10).

83     Plaintiff's First Amended Complaint was filed on October 26, 2016 as an attachment to Plaintiff's Motion for Leave to File First Amended Complaint. *Id.* at § 2(a)(11).

## ARGUMENT AND AUTHORITIES[5]

## I.     STANDARD OF REVIEW.

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

---

[5]  Tyson refers to its Statement of Uncontroverted Material Facts in its Argument and Authorities as (SOF ¶\_\_).

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## II. PLAINTIFF'S SEXUAL HARASSMENT CLAIM FAILS AS A MATTER OF LAW.

To survive summary judgment on her sexual harassment claim, Plaintiff must show, among other things, that Tyson is liable for the alleged sexual harassment on a negligence theory — that is, that Tyson knew or should have known about the alleged harassment and failed to adequately address or remedy such conduct. *Adler,* 144 F.3d at 673. As set forth below, there is no evidence from which a jury could conclude that: (1) Tyson had actual or constructive knowledge of the alleged harassment until Plaintiff first reported it to a supervisor, at which time Tyson took prompt and corrective action, or (2) Tyson's response to Plaintiff's report of harassment was inadequate. To the contrary, the uncontroverted material facts establish as a matter of law that Tyson's response was prompt, adequate and effective.

### A. There is no Evidence That Tyson Knew or Should Have Known of the Alleged Sexual Harassment Until Plaintiff First Reported it to a Supervisor.

"An employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care, should have known." *Id.* In the Tenth Circuit, a plaintiff demonstrates actual employer knowledge where she has reported harassment to a management-level employee. *Id.* As to constructive knowledge, courts may infer that an employer had constructive knowledge of sexual harassment where the pervasiveness of the harassment supports such an inference. *Id.*

Here, Plaintiff failed to report Mr. Richardson's alleged sexually harassing conduct to any Tyson supervisor until Saturday, September 12, 2015. (SOF ¶32). There is no evidence that Tyson had actual or constructive knowledge of the alleged harassment prior to that date. While Plaintiff shared concerns about Mr. Richardson with two hourly Team Leads on September 9th and 10th, these conversations did not constitute sufficient notice to Tyson under the applicable negligence principles. (SOF ¶¶21-24, 26-29). Under Tenth Circuit law, non-management

employees' knowledge of alleged harassment may not be imputed to the employer. *Id.* (stating that "[a]ctual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to *management-level* employees.") (emphasis added). In this case, it is undisputed that the Team Leads Plaintiff spoke with on September 9th and 10th are not supervisors and do not have any authority to hire, fire, or discipline Plaintiff or other employees. (SOF ¶23). Rather, these Team Leads are hourly employees who assist supervisors with running the production line and, like Plaintiff, also perform the Production Packer role. (SOF ¶22). While Tyson supervisors have greater responsibilities under Tyson's Harassment and Discrimination Policy, the Team Leads have no greater responsibility than any other hourly Tyson Team Member (including Plaintiff) to report harassment. (SOF ¶24). There is simply no basis for imputing their knowledge to Tyson.

This is especially true considering the undisputed facts regarding Plaintiff's knowledge of Tyson's multiple avenues by which to report harassment and her decision to delay reporting through *any* of those avenues until September 12, 2015. Plaintiff was trained on Tyson's Harassment and Discrimination Policy, which provides two toll-free reporting hotlines and multiple other reporting avenues. (SOF ¶¶ 9-14). Despite her knowledge of Tyson's multiple reporting avenues, she did not utilize any of them until September 12, 2015 when she first reported the alleged harassment to Tyson management. (SOF ¶¶15, 32). Plaintiff did not report Mr. Richardson "upstairs" before that date because she did not want him to lose his job and wanted to give him a chance to back off before reporting his conduct. (SOF ¶29). And, when Team Lead Jun Penn offered to address Plaintiff's concern with Mr. Richardson, Plaintiff asked him not to do so. (SOF ¶28).

Knowledge of the alleged harassment cannot be imputed to Tyson in these circumstances where Plaintiff deliberately delayed reporting to management or through any of the other multiple reporting avenues. *See Pinkerton v. Colorado Dept. of Transportation*, 563 F.3d 1052, 1063 (10th Cir. 2009) (emphasizing that victims of alleged harassment must "make[] a concerted effort to inform the employer that a problem exists.") (quoting *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 812-813 (7th Cir. 1999)); *Chapman v. Carmike Cinemas*, 307 Fed. Appx. 164, 173 (10th Cir. 2009) (holding that the plaintiff's failure to complain to higher management or to use any of the designated reporting avenues left the employer without an opportunity to enforce its anti-harassment policy). Indeed, as set forth below, Tyson's immediate response upon Plaintiff's report to management shows that, had she timely reported to Tyson management on September 9th, that would have prevented the harassment that allegedly occurred on September 10th and 11th.[6] *See Pinkerton*, 563 F.3d at 1063-1064 ("This case provides a good example of why we ought to encourage saving action by employees, given that once [the plaintiff] did complain, the harassment stopped. Had [the employer] been notified earlier, there is a good chance that Title VII's primary goal of preventing harm would have been served.").

### B.      Tyson Adequately Addressed and/or Remedied the Alleged Harassment.

An employer's liability for allowing a sexual hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and

---

[6]      Even assuming that Tyson had actual or constructive knowledge by virtue of Plaintiff speaking with the Team Leads on September 9th and September 10th, there is no dispute that Mr. Richardson stopped harassing Plaintiff once she reported his conduct to a supervisor on September 12th. (SOF ¶¶55-56). That the alleged harassment stopped within a few days of its start evidences Tyson's prompt remedial action that precludes employer liability. *See Benavides v. City of Oklahoma City*, 508 F. App'x 720, 722-724 (10th Cir. 2013) (employer's response was prompt and appropriate, sufficient to grant summary judgment where investigation was initiated almost four weeks after complaint was made and discipline was issued almost four months later); *Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1069 (10th Cir. 2007) (affirming summary judgment because the employer's remedial measures were prompt when taken about a month after the report was made); *Stewart v. Bd. of Comm'rs for Shawnee Cty., Kansas*, 216 F. Supp. 2d 1265, 1279 (D. Kan. 2002) (finding remedial action was prompt when taken four days after the incident).

preventative responses to any actually or constructively known harassment. *See Adler*, 144 F.3d at 673 (a plaintiff "must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."). The "touchstone" for measuring an employer's response to sexual harassment is reasonableness. *Id.* at 675-676. The Tenth Circuit has expressly recognized that a district court may, on summary judgment, determine whether an employer's responses to claims of sexual harassment were reasonable as a matter of law. *Id.*

Key factors in determining the reasonableness of an employer's response are the promptness and effectiveness of any action. *Id.* at 676. The Tenth Circuit recognizes that "[i]t is not always possible for an employer to completely eliminate offensive behavior, and thus the effectiveness inquiry looks not to whether offensive behavior actually ceased but to whether the 'remedial and preventative action was reasonably calculated to end the harassment.'" *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1245 (10th Cir. 2001) (quoting *Adler*, 144 F.3d at 676). In this regard, "an employer is not required to terminate an employee upon its conclusion that the employee has engaged in sexual harassment." *Turrentine v. United Parcel Service, Inc.*, 645 F. Supp. 2d 976, 984 (D. Kan. 2009) (citing *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1258 (10th Cir. 2003)) ("[I]f we required employers to . . . impose excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination."). Rather, an employer is only required to respond in a manner that is reasonably calculated to end the harassment. *Adler*, 144 F.3d at 676.

Here, there is no evidence from which a jury could conclude that Tyson's response was inadequate. To the contrary, the record establishes as a matter of law that Tyson's response was prompt, adequate and effective. Upon Plaintiff's report to management on Saturday, September

12, 2015, Tyson immediately commenced an investigation by: (1) interviewing Plaintiff and obtaining her written statement; (2) obtaining Mr. Richardson's written statement and suspending him for the day without pay; (3) obtaining written statements from the Team Leads Plaintiff spoke with about her concerns on September 9th and 10th, and (4) obtaining written statements from the Team Members on duty who viewed the pictures of Mr. Richardson in the locker room. (SOF ¶¶33-38). After evaluating this information, Tyson's Human Resources Manager Simone Clifford determined that Plaintiff's complaint was substantiated and took disciplinary action against Mr. Richardson on Monday, September 14th. (SOF ¶40). Though Mr. Richardson had no prior disciplinary action, Ms. Clifford issued him a Level 3 Final Warning with a one-day suspension. (SOF ¶¶39, 41). She also reviewed with him Tyson's Harassment and Discrimination Policy, told him to avoid all contact with Plaintiff, and temporarily moved him to a different area of Plaintiff's department pending permanent reassignment to a different department altogether. (SOF ¶¶42-44).[7] Finally, in response to Plaintiff's report on September 25, 2015 that Mr. Richardson was staring at her in team huddles, Tyson immediately effectuated Mr. Richardson's permanent transfer to the warehouse, where he began training on first shift the very next day. (SOF ¶¶51-53).

Tyson's prompt and corrective action taken in response to Plaintiff's report about Mr. Richardson was not only reasonable, but effective — as of the time Plaintiff reported Mr. Richardson's conduct to a supervisor on September 12, 2015, Mr. Richardson stopped sexually harassing her. (SOF ¶¶55-56). In the Tenth Circuit, such "stoppage of the harassment by the disciplined perpetrator evidences effectiveness." *Adler*, 144 F.3d at 676. In *Adler*, the Tenth Circuit affirmed summary judgment in favor of the employer on Plaintiff's sexual harassment

---

[7]  Tyson subsequently issued Team Member Kim Cobb a Level 1 Documented Reminder for showing the inappropriate photographs of Mr. Richardson to other Team Members and conducted a facility-wide retraining on its Harassment and Discrimination Policy. (SOF ¶¶46, 54).

claim. The Circuit found that the employer's responses to each incident of which it had actual or constructive knowledge were prompt and effective as evidenced by either a complete stoppage by the disciplined harasser or a proportional response to the seriousness and frequency of the incidents. *Id.* at 677. The Circuit concluded that the responses were therefore reasonably calculated to end the harassment. *Id.*

Similarly, in *MacKenzie v. City & County of Denver*, the plaintiff complained to her employer that her supervisor, continuing over the course of 18 months, had subjected her to a hostile work environment based on her age. 414 F.3d 1266, 1270 (10th Cir. 2005). The employer responded by immediately counseling the supervisor and requiring him to apologize to the plaintiff. *Id.* Affirming the district court's grant of summary judgment in favor of the employer on the harassment claim, the Tenth Circuit held that the employer's response was "prompt, adequate and effective as a matter of law" based on the undisputed fact that the supervisor never again made inappropriate comments. *Id.* at 1281; *see also Glover v. NMC Homecare, Inc.,* 13 Fed. Appx. 896, 903 (10th Cir. 2001) (affirming summary judgment where, although the employer determined its investigation of the plaintiff's harassment complaint was inconclusive, it immediately investigated and effectively stopped the harassing conduct toward the plaintiff); *Turrentine*, 645 F. Supp. 2d at 985 (holding that the employer could not be liable for harassment where its response of issuing the alleged harasser a one-day suspension was effective because his alleged harassment of the plaintiff ceased); *Hoss v. The Art Institutes International – Kansas City, Inc. et al.,* No. 13-2206-JTM, 2014 WL 3845134, at *5-6 (D. Kan. Aug. 5, 2014) (holding that the employer could not be liable for harassment where it immediately investigated the plaintiff's complaint, issued the alleged harasser a written warning, moved his work space away from the plaintiff, and required the entire team to attend harassment awareness training, even

though the plaintiff felt awkward when the alleged harasser returned to work); *Hollis v. Acoustic Sounds, Inc.*, No. 13- 1083-JWL, 2014 WL 806190, at *5-6 (D. Kan. Feb. 28, 2014) (holding that the employer could not be held liable for harassment where the plaintiff's complaint of harassment had the effect of stopping the issues about which she complained).

Even where the harassment does not stop and an alleged harasser persists, an employer is not liable so long as each response was reasonable. *Adler*, 144 F.3d at 676, 677 (noting that a regression of behavior over time does not necessarily mean that the employer's initial response was unreasonable); *Asebedo v. Kansas State University*, No. 12- 1373-EFM, 2015 WL 4664932, at *6-7 (D. Kan. Aug. 5, 2015) (holding that the employer's response to the plaintiff's second harassment complaint — placing the alleged harasser on a one-day suspension — was prompt and proportionate to the gravity of the situation); *Hamilton v. Upper Crust, Inc.,* No. 10–0718–CVE, 2011 WL 3880932, at *5-7 (N.D. Okla. Sept. 12, 2011) (holding that employer could not be liable for co-worker harassment where it spoke to alleged harasser following the plaintiff's first complaint regarding his conduct, even though he allegedly continued to engage in harassing conduct toward the plaintiff thereafter). Responses found to have been reasonable "have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination." *Adler*, 144 F.3d at 676; *Scarberry*, 328 F.3d at 1259 (holding that employer could not be liable for co-worker harassment where, after investigation, the alleged harasser was counseled regarding inappropriate behavior and the company's anti-harassment policy).

Here, Tyson employed all of these responses. (SOF ¶¶33-35, 37-38, 41-44, 46, 53-54). They were not only reasonable, but effective, particularly given Plaintiff's admission that

Mr. Richardson stopped sexually harassing her as of the time she reported his conduct to a supervisor. (SOF ¶¶55-56). Tyson is entitled to summary judgment on Plaintiff's sexual harassment claim.

## III. PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff contends that Tyson retaliated against her by engaging in the following conduct:

1. Allegedly intimidating or ridiculing her;
2. Allegedly threatening to write her up;
3. Allegedly telling her she had victimized Mr. Richardson by reporting him for sexual harassment;
4. Allegedly refusing to investigate her September 25, 2015 complaint against Mr. Richardson;
5. Allegedly attempting to terminate her employment;
6. Allegedly issuing her an Hourly Corrective Action Form on October 26, 2015 for conduct that occurred on May 11, 2015;
7. Allegedly issuing her an Hourly Corrective Action Form on October 26, 2015 for conduct that occurred on September 1, 2015;
8. Issuing her an Hourly Corrective Action Form on February 2, 2016;
9. Issuing her an Hourly Corrective Action Form on April 29 or 30, 2016, and
10. Issuing her an Hourly Corrective Action Form on October 10, 2016.

Pretrial Order, §4(a)(2). As set forth below, Plaintiff is jurisdictionally barred from relying on the actions alleged in Nos. 5, 6, 7 and 10 because she failed to exhaust her administrative remedies for these alleged acts.

In order to establish a *prima facie* case of retaliation on those alleged acts that were properly exhausted, Plaintiff must establish that she: (1) engaged in statutorily protected activity, (2) suffered a materially adverse action, and (3) a causal connection exists between the two. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (internal quotation omitted). Regardless of whether she can establish a *prima facie* case, Plaintiff also must establish that Tyson's stated reasons for its actions were a pretext for retaliation in order to overcome summary judgment. *Debord v. Mercy Health System of Kansas, Inc.,* 737 F.3d 642, 655 (10th Cir. 2013). Plaintiff's retaliation claims fail at both stages of this analysis.

## A. Plaintiff Failed to Exhaust Her Administrative Remedies for Some of the Alleged Acts She Now Contends Were Retaliatory.

Federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the Equal Employment Opportunity Commission. *Eisenhour v. Weber Cnty.,* 744 F.3d 1220, 1226 (10th Cir. 2014) (internal citation omitted). The United States Supreme Court has held that every discrete act of discrimination or retaliation must be raised in a charge of discrimination with the EEOC. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *see also Eisenhour,* 744 F.3d at 1227 ("each act of retaliation must be separately exhausted, even when acts that post-date the EEOC complaint reasonably relate to others presented to the EEOC."). "[F]ederal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents." *Eisenhour,* 744 F.3d at 1227 (finding no jurisdiction over an unexhausted claim that occurred after the filing of the initial charge of discrimination).

Here, Plaintiff has failed to exhaust administrative remedies on all alleged instances of retaliation not specifically cited in her EEOC charges. Plaintiff filed two charges in this matter: the first on October 2, 2015 and the second on July 14, 2015. (SOF ¶¶79, 81). Neither charge references the alleged retaliatory acts that Tyson attempted to terminate her employment, issued her hourly corrective action forms on October 26, 2015 for conduct that occurred on May 11, 2015 and September 2015 or issued her an hourly corrective action on October 10, 2016. *See* Plaintiff's Charges of Discrimination, Ex. B and C to Pl. First Am. Compl. (ECF 15). Certainly, Plaintiff's original charge could not have contained facts based on alleged retaliatory acts that had not yet occurred when she filed her first charge — namely, that Tyson attempted to terminate her employment (SOF ¶¶64-68), asked her to sign hourly corrective action forms on

October 26, 2015 (SOF ¶67), or issued her an hourly corrective action on October 10, 2016 (SOF ¶78). But, as of the time Plaintiff filed her second charge in July 2016, the events underlying her claims that Tyson had attempted to terminate her employment (SOF ¶¶64-68) and asked her to sign hourly corrective action forms on October 26, 2015 (SOF ¶67) had occurred; yet, Plaintiff failed to reference any of these alleged actions in her second charge. Likewise, while neither of Plaintiff's charges could have contained reference to the October 10, 2016 corrective action that had not yet been issued, Plaintiff did not file any subsequent charges raising this or any of the other alleged retaliatory acts that she failed to reference in her first two charges.

Thus, Plaintiff has failed to exhaust her administrative remedies with respect to these alleged acts and the Court therefore lacks jurisdiction to hear any retaliation claim based on such acts. *See Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (holding that the plaintiff failed to exhaust her administrative remedies with respect to alleged retaliatory action that was not raised in her charge because it occurred after the charge was filed); *Lincoln v. BNSF Railway Co.,* Case No. 15- 4936-DDC, 2017 WL 1437302, at *12-13 (D. Kan. April 24, 2017) (holding that a plaintiff failed to exhaust his administrative remedies with respect to alleged retaliatory acts that had not occurred at the time he filed his charge). Consequently, Plaintiff's retaliation claims based on Tyson's alleged attempt to terminate her employment, alleged issuance of corrective action forms on October 26, 2015 for conduct that occurred on May 11, 2015 and September 2015, and issuance of the corrective action on October 10, 2016 must be dismissed.

### B. Plaintiff Cannot Establish a *Prima Facie* Case Because Her Alleged Acts of Retaliation Do Not Constitute Materially Adverse Actions.

None of Plaintiff's alleged acts of retaliation amount to materially adverse actions. A "materially adverse" action is one that is "harmful to the point that [it] could well dissuade a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed 2d 345 (2006). "This requires injury rising to a 'level of seriousness.'" *Daniels*, 701 F.3d at 638 (quoting *Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1087 (10th Cir. 2007)). A materially adverse action does not include "petty slights, minor annoyances, and simple lack of good manners." *Burlington*, 548 U.S. at 68.

Plaintiff remains employed by Tyson and none of the conduct she alleges as retaliatory resulted in any change in status, pay, benefits, job responsibilities, or any other action that amounts to a materially adverse action.[8] *See, e.g., Roecker v. Brennan,* Case No. 15-7201-DDC, 2017 WL 4455042017, at *12 (D. Kan. Feb. 2, 2017) (placement of the plaintiff on one day of paid leave was not adverse action sufficient to support retaliation claim because it did not change the plaintiff's status, pay, or benefits) (internal citations omitted). Under Tenth Circuit law, incidents similar to those alleged by Plaintiff as retaliatory do not rise to the level of "materially adverse."

First, none of Plaintiff's verbal or written warnings amount to materially adverse actions. (SOF ¶¶61-62, 67, 69-72, 74-76, 78); *see Keller v. Crown Cork & Seal USA, Inc.,* 491 Fed. Appx. 908, 913-914 (10th Cir. 2012) (alleged strict application of policies, increased supervision, write-ups, means and methods of communication with supervisors, and restrictions on employment relationships did not rise to materially adverse actions sufficient to support retaliation claim); *Steele v. Kronenke Sport Enterprises, L.L.C.*, 264 Fed. Appx. 735, 746 (10th

---

[8]   Indeed, Plaintiff is not making any claim for past or future lost wages or benefits. Pretrial Order, §2(a)(15).

Cir. 2008) (verbal warning and "snubbing" were not materially adverse actions).[9] This Court has held that such disciplinary actions are not materially adverse where, as here, they do affect the plaintiff's employment in any material way. For example, in *Olson v. Shawnee County Bd. of Com'rs*, the plaintiff alleged numerous retaliatory actions, including verbal and written reprimands issued as part of the employer's progressive discipline policy. 7 F. Supp. 1162, 1205-06 (D. Kan. 2014). The court held that these reprimands were not material adverse actions because they did not alter the conditions of the plaintiff's employment in that they did not lead to her termination or otherwise affect her work or pay. *Id.* at 1206; *see also Boese v. Fort Hays State Univ.,* 814 F. Supp. 2d 1138, 1148 (D. Kan. 2011), *aff'd,* 462 Fed. Appx. 797 (10th Cir. 2012) (written warning not a materially adverse employment action because it did not affect the plaintiff's employment in any material way); *Cotton v. Costco Wholesale Corporation*, No. 12-2731-JWL, 2014 WL 21908 at *7 (D. Kan. Jan. 3, 2014) (finding constant verbal reprimands, derogatory comments from supervisors, performance appraisal noting several areas of improvement, denial of opportunity to transfer — even taken in the aggregate — did not amount to materially adverse actions); *Shaver v. Rottinghaus Co., Inc.,* No. 09–1193–EFM, 2011 WL 3880893113, at *14 (D. Kan. Sept. 2, 2011) (write-up not materially adverse because it caused no change in the plaintiff's employment status, she was not terminated, did not lose hours, or experience any change in pay or responsibilities). Likewise, that Tyson on October 26, 2015 asked Plaintiff to sign corrective actions for discipline that was undisputedly part of her record

---

[9] Other Circuits have reached the same conclusion. *See e.g. Chang v. Horizons*, 254 Fed. Appx. 838, 839 (2d Cir. 2007) (oral and written warnings do not amount to materially adverse actions); *Dehart v. Baker Hughes Oilfield Operations*, 214 Fed. Appx. 437, 442 (5th Cir. 2007) (written warning was not materially adverse); *Melton v. United States DOL*, 373 Fed. Appx. 572, 577-78 (6th Cir. 2010) (written warning was not materially adverse); *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 307 n. 31 (7th Cir. 2012) (written warning was not materially adverse); *Hill v. City of Pine Bluff*, 696 F.3d 709, 715 (8th Cir. 2012) (written warning was not materially adverse).

*prior to* her protected activity falls far short of amounting to a materially adverse action. (SOF ¶¶60-62, 67).

Second, Plaintiff's allegations that Tyson intimidated or ridiculed Plaintiff, accusing Plaintiff of victimizing Mr. Richardson for reporting her concerns and threatening to write her up, constitute materially adverse actions. (SOF ¶¶47-49). This Court has held that there is no such adverse action where managers are berating, intimidating or critical or subject the plaintiff to uncomfortable or distressing situations. *Turrentine,* 645 F. Supp. 2d at 991 (hostile and intimidating comments made by management were not materially adverse); *Winn v. K.C. Rehabilitation Hosp., Inc.,* No. 13–2423–DDC, 2015 WL 6804045, at *25-26 (D. Kan. Nov. 5, 2015) (negative treatment and comments about the plaintiff's lawsuit not sufficiently adverse to support retaliation claim) (citing *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998) (explaining that "unnecessary derogatory comments" are not in themselves materially adverse employment actions)); *Nyanjom v. HawkerBeechcraft Corp.,* No. 12-1461-JAR, 2015 WL 3397934, at *18-19 (D. Kan. May 26, 2015) (allegations that employer conducted intimidating meetings and subjected the plaintiff to verbal abuse and insults, among other things, were not materially adverse); *Sifuentes v. United Parcel Serv., Inc.*, No. 10-2178-RDR, 2012 WL 5907385, at *12 (D. Kan. Nov. 26, 2012) ("extremely angry comments by a supervisor have not been considered sufficient to constitute a materially adverse action."). Plaintiff's allegations of intimidation similarly fall short of being materially adverse, especially in these circumstances where Tyson took action on her complaint against Mr. Richardson (including by issuing him a Final Warning) and never disciplined Plaintiff for "victimizing" Mr. Richardson or otherwise in connection with her report against him. (SOF ¶¶41, 43, 44, 50, 53).

Third, Tyson's alleged refusal to investigate Plaintiff's September 25, 2015 complaint against Mr. Richardson[10] does not qualify as materially adverse to support her retaliation claim. *See Daniels*, 701 F.3d at 640-41 (10th Cir. 2012) (failure to investigate discrimination complaint did not constitute materially adverse action); *Keller,* 491 Fed. Appx. at *5–913-914 (failure to respond to hostile work environment complaints in addition to other allegedly hostile conduct not sufficient to establish hostile work environment in retaliation for opposition to discrimination or constructive discharge); *Sifuentes*, 2012 WL 5907385, at *12 (allegation that employer ignored and failed to respond to the plaintiff's complaints not materially adverse).

Finally, Plaintiff's allegations that Tyson threatened to write her up and attempted to terminate her employment do not amount to materially adverse employment actions. As noted above, Tyson never disciplined Plaintiff in connection with her report against Mr. Richardson. (SOF ¶50). And, while Tyson considered issuing discipline (up to termination of employment) in connection with Plaintiff's policy violation on October 23, 2015, it ultimately decided against doing so. (SOF ¶¶64-66, 68). Such unrealized "threats" are not materially adverse. *See Dye v. Moniz*, 672 F. App'x 836, 840 (10th Cir. 2016) (threat of performance improvement plan, among other alleged actions, did not amount to materially adverse action); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (noting that the Tenth Circuit has "never expressly held that an unrealized threat of termination, without more, constitutes an adverse employment action"); *Cuenca v. Univ. of Kansas*, 265 F. Supp. 2d 1191, 1209 (D. Kan. 2003), *aff'd*, 101 F. App'x 782 (10th Cir. 2004) (threats of disciplinary action or termination are not adverse employment actions).

---

[10]  Contrary to Plaintiff's allegation, it is undisputed that Tyson did follow-up on this complaint by speaking with the co-worker Plaintiff identified as a witness to the conduct Plaintiff complained of and immediately finalizing arrangements to permanently transfer Mr. Richardson out of Plaintiff's department. (SOF ¶¶51-53).

Simply put, none of the actions Plaintiff alleges as retaliatory would dissuade a reasonable worker from making or supporting a charge of discrimination. Indeed, none of these alleged acts so dissuaded Plaintiff — she filed her first EEOC charge immediately after Tyson allegedly intimidated or ridiculed her, threatened to write her up, told her she had victimized Mr. Richardson, and refused to investigate her September 25, 2015 complaint against Mr. Richardson. (SOF ¶¶47-49, 51, 79). She filed her second EEOC charge after Tyson allegedly attempted to terminate her employment, had her sign the corrective actions effective May 11, 2015 and September 1, 2015, and issued the corrective actions effective February 2 and April 22, 2015. (SOF ¶¶67, 69-72, 74-76, 81). This, as the Tenth Circuit has recognized, sheds some light on "whether the actions are sufficiently material and adverse to be actionable." *Somoza v. Univ. of Denver,* 513 F.3d 1206, 1214 (10th Cir. 2008) ("[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable."); *see also Shaver,* 2011 WL 3880893113 at *14 (evidence that the plaintiff immediately filed a retaliation charge after receiving a write-up she challenged as retaliatory diminished the material adversity of the action). As none of Plaintiff's alleged acts of retaliation are materially adverse, her retaliation claims should be dismissed.

### C. Plaintiff Cannot Establish a *Prima Facie* Case Because There is No Evidence of a Causal Connection.

Even if Plaintiff alleged retaliatory acts that amounted to materially adverse actions, she still bears the burden to show that her complaint of sexual harassment was the "but for" cause of these alleged acts. *Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S.Ct. 2517, 2534 (2013). She has no evidence of such motivation, and her mere speculation that a causal connection exists is insufficient. She may show a causal connection with evidence of circumstances which justify an

inference of retaliatory motive, such as protected conduct followed closely by adverse action. *Meiners v. Univ. of Kan.,* 359 F.3d 1222, 1231 (10th Cir. 2004). Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be *very close in time*. *Id.* (emphasis in original, internal citation omitted). Otherwise, Plaintiff must offer additional evidence to establish causation. *Id.*

Plaintiff made her sexual harassment complaint on September 12, 2015, filed her first EEOC charge on October 2, 2015 and filed her second EEOC charge on July 14, 2016. (SOF ¶¶32, 79, 81). The corrective actions she signed on October 26, 2015 cannot serve as a basis for her retaliation claim because the discipline at issue in these forms occurred *prior to* Plaintiff's protected activity. (SOF ¶¶60-62, 67). There is no dispute that these corrective actions were part of Plaintiff's disciplinary record prior to the time she made her sexual harassment complaint and filed her first EEOC charge. *Id.* Certainly, Plaintiff's sexual harassment complaint and EEOC charges cannot be the "but for" cause of these disciplinary actions that were part of Plaintiff's record *before* she ever engaged in protected activity. *See Shaver*, 2011 WL 3880893, at *14-15 (holding that demotion, transfer and reduction of hours that occurred prior to the plaintiff's charge could not be causally related to her protected activity).

The subsequent actions Plaintiff alleges as retaliatory each occurred months after her protected activity. The corrective action effective February 2, 2016 was issued more than four months after Plaintiff made her sexual harassment complaint, and almost five months after Plaintiff filed her first EEOC charge. (SOF ¶¶32, 69-72, 79). The corrective action effective April 22, 2016 was issued more than seven months after Plaintiff made her sexual harassment complaint, and almost eight months after Plaintiff filed her first EEOC charge. (SOF ¶¶32, 74-76, 79). And, the corrective action effective October 10, 2016 was issued more than one year

after Plaintiff made her sexual harassment complaint and filed her first EEOC charge, and almost three months after Plaintiff filed her second EEOC charge. (SOF ¶¶32, 78-79, 81).

These passages of time undermine any causal link. *See Meiners,* 359 F.3d at 1231 (concluding that the plaintiff failed to establish a causal connection where adverse action came at least two months and one week after protected activity); *Hysten v. Burlington N. and Santa Fe Ry. Co.,* 296 F.3d 1177, 1183 (10th Cir. 2002) (holding that three months between protected activity and a written reprimand was insufficient, standing alone, to establish causal connection); *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (holding that a three-month period, standing alone, is insufficient to establish causation); *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1395 (10th Cir. 1997) (explaining that "the four month time lag between [plaintiff's] participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation."); *Gardenhire v. Manville*, No. 15-4914-DDC, 2017 WL 445506, at *10 (D. Kan. Feb. 2, 2017) (nearly five months between the plaintiff's protected activity and adverse action insufficient to establish a causal connection); *Winn*, 2015 WL 6804045, at *27 (more than four months between the plaintiff filing her lawsuit and her termination of employment insufficient to establish a causal connection).

In sum, the attenuated timing between Plaintiff's protected activity and alleged retaliatory actions is simply insufficient to establish causation. Plaintiff's retaliation claims should be dismissed on this basis alone.

### D. Tyson Had Legitimate, Non-Retaliatory Reasons for Issuing Corrective Actions to Plaintiff and Plaintiff Cannot Show these Reasons Were Pretext for Retaliation.

Even if Plaintiff could establish a *prima facie* case of retaliation (which she cannot), her retaliation claims fail because she cannot establish that the legitimate, non-discriminatory reasons for the alleged actions at issue were a pretext for retaliation. Plaintiff's only "evidence"

of pretext is her self-serving belief that Tyson's actions were retaliatory, which is insufficient as a matter of law. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment).

Plaintiff can make a showing of pretext in one of three ways: (1) evidence that Tyson's stated reasons for the alleged adverse action was false, *i.e.,* unworthy of belief; (2) evidence that Tyson acted contrary to a written company policy prescribing the alleged action to be taken under the circumstances; or (3) evidence that Tyson acted contrary to an unwritten policy or contrary to company practice when making the alleged adverse employment decision affecting her. *Kendrick v. Penske Transp. Servs Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000). In determining whether the proffered reason is pretextual, the court examines "the facts as they appear *to the person making the decision,* not as they appear to the plaintiff." *Debord,* 737 F.3d at 655 (emphasis in original, internal citation omitted). The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id.*

There is simply no evidence in the record even suggesting that Tyson's stated reasons for its corrective action decisions with respect to Plaintiff are false or that it failed to follow its Progressive Corrective Action policy to Plaintiff's detriment in acting on these decisions:

- As for Tyson asking Plaintiff on October 26, 2015 to sign corrective actions for discipline that occurred before she engaged in any protected activity, there is no dispute that these corrective actions were part of her disciplinary record prior to her protected activity. (SOF ¶¶60-63, 67). When reviewing Plaintiff's file in connection with considering the appropriate disciplinary action for the policy violation she committed on October 23, 2015, Tyson realized that Plaintiff had never signed these earlier corrective actions and therefore asked her to do so. (SOF ¶67).

- Though a Tyson supervisor proposed corrective action for Plaintiff as a result of the policy violation she committed on October 23, 2015, Tyson ultimately decided against issuing any such corrective action for this infraction. (SOF ¶¶57-59, 64-66, 68).

- Tyson issued Plaintiff the corrective action effective February 2, 2016 because she violated company policy by using incorrect cardstock samples and falsely documenting that she had collected the correct cardstock, resulting in 14 pallets of product being placed on hold. As to this incident, Plaintiff acknowledges that she was not concentrating as she should have been. Tyson has issued the same discipline to at least two other employees for engaging in similar violations. (SOF ¶¶5-7, 57-59, 69-73).

- Tyson issued Plaintiff the corrective action effective April 22, 2016 for taking an unauthorized extended break. As Plaintiff's Level 2 Written Reminder from February 2, 2016 was still active, this corrective action was issued at a Level 3 Final Warning consistent with the facility's Progressive Corrective Action Policy. Tyson has issued corrective actions to at least 26 other employees for taking unauthorized extended breaks. (SOF ¶¶57-59, 74-77).

- Tyson issued Plaintiff the corrective action effective October 10, 2016 for failing to wear her safety glasses on the production floor. This corrective action was issued as a Documented Conversation — the lowest level of discipline under the facility's Progressive Corrective Action Policy. (¶¶57-59, 78).

Notably, though Plaintiff engaged in policy violations while she was on active Level 3 Final Warnings, Tyson did not end her employment and instead utilized more lenient progressive discipline (or no discipline at all). For example, though Plaintiff's Level 3 Final Warning from May 11, 2015 was still active, Tyson did not terminate her employment when she engaged in similar policy violations on October 23, 2015 and February 2, 2016. Rather, Tyson decided against issuing Plaintiff any discipline for her violation in October 2015 and issued her a Level 2 Written Reminder for her violation in February 2016. (SOF ¶¶5-7, 57-59, 60-61, 64-66, 68-73).

Likewise, though Plaintiff's Level 3 Final Warning from April 22, 2015 was still active, Tyson did not terminate her employment when she failed to wear her safety glasses on the production floor in October 2016. Instead, Tyson issued Plaintiff a Documented Conversation — the most lenient discipline available under its Progressive Corrective Action Policy. (SOF ¶¶57-59, 74-78). In sum, Tyson elected to use a more lenient approach with Plaintiff on three separate occasions even though it could have terminated her under its Progressive Corrective Action Policy on each occasion.

Plaintiff offers no evidence, nor is there any, to suggest Tyson's legitimate, non-discriminatory reasons for these decisions were a pretext for retaliation. Consequently, her retaliation claims must be dismissed.

## IV.     CONCLUSION.

For the foregoing undisputed facts, authority and arguments, Tyson respectfully requests that its Motion for Summary Judgment be granted, and that all of Plaintiff's claims be dismissed in their entirety.

Respectfully submitted by:

Date:  July 31, 2017                    SHOOK, HARDY & BACON L.L.P.

By: /s/  Carrie A. McAtee
Carrie A. McAtee, D. Kan. #77889

2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547
Email:  cmcatee@shb.com

ATTORNEYS FOR TYSON FOODS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, a copy of the foregoing document and all exhibits referenced therein were served via the court's electronic case filing system on the following:

**RALSTON KINNEY, LLC**
Kenneth D. Kinney
4717 Grand Avenue, Suite 250
Kansas City, MO 64112
Tel:  (816) 298-0070
Fax: (816) 298-9455
Email: ken@rklawllc.com

**HOLMAN SCHIAVONE, LLC**
Kirk D. Holman
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL:   (816) 283-8738
FAX:   (816) 283-8739
Email: kholman@hslawllc.com

ATTORNEY FOR PLAINTIFF


      /s/  Carrie A. McAtee
ATTORNEY FOR DEFENDANT