# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TONIA THOMPSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-2496-DDC |
| | ) |
| TYSON FOODS, INC., | ) |
| Defendant. | ) |

### PLAINTIFF'S SUGGESTIONS IN SUPPORT OF HER
### MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Tonia Thompson and provides the following facts, evidence, authorities and argument to support her motion for partial summary judgment.

### INTRODUCTION

Plaintiff alleges two separate claims: (1) sexual harassment; and (2) retaliation. Both claims arise under Title VII, 42 U.S.C. §§ 2000e - 2000e-17. Plaintiff seeks summary judgment on two particular issues related to her claim of sexual harassment.

### ISSUES FOR WHICH PLAINTIFF SEEKS SUMMARY JUDGMENT

1. One element of Plaintiff's sexual harassment claim is her membership in a protected class. *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007) (stating elements of hostile work environment). It is undisputed that Plaintiff is female, so this issue should not be submitted to the jury.

2. Plaintiff must also prove there is a basis to impute liability to Defendant. *Id.* This can be done by showing Defendant knew about the harassment and failed to respond adequately. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). The evidence shows that Defendant failed to respond adequately because even though Defendant disciplined Richardson for violating its sexual harassment policy: (1) he was never informed the write-up was for harassing Plaintiff, (2) Defendant granted his request for a transfer and raise even though

company policy prohibited it, (3) Defendant threatened Plaintiff for reporting Richardson; and (4) Defendant ignored Plaintiff's second complaint. Rewarding the harasser and intimidating the complainant does not qualify as an adequate response to sexual harassment.

## SUMMARY JUDGMENT STANDARD

Upon the requisite showing, summary judgment may be entered on a specific part of a claim or defense. Fed.R.Civ.P. 56(a). To obtain summary judgment, the movant must show the absence of a genuine dispute as to any fact that is material to the issues before the Court. *Id.* A material fact is one which has a direct bearing on the legal issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is material depends on the substantive law governing the case. *See id*. Even though the evidence must be viewed against the movant, summary judgment may be granted where undisputed facts show the movant is entitled to judgment as a matter of law for the issues on which it seeks summary judgment. *Id.*

## STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.01(a), Plaintiff provides the following:

1. Plaintiff is female. **Exhibit 1**: Doc. 16, *Defendant Tyson Foods, Inc.'s Answer to Plaintiff's First Amended Complaint*¸¶5.

2. Nina Erickson testified on behalf of Defendant its Rule 30(b)(6) representative concerning the topics requested by Plaintiff. **Exhibit 2**: Erickson Depo. 4:5-6; 4:19-21; 9:15-23.

3. Defendant designated Erickson to testify regarding Defendant's "EEO, harassment, and retaliation policies;" "Policies and practices related to transfers, promotions, and the compensation of hourly employees;" and "All actions taken in response to Plaintiff's complaint against Tony Richardson on September 12, 2015, or in response to the investigation

that ensued thereafter." **Ex. 2**, 9:15-23; **Exhibit 3**: Doc. 35, *Amended Notice to Take Videotaped Deposition of Tyson Foods, Inc.*, ¶1(a); ¶1(c); and ¶3 (Depo. Ex. 63).

4. Defendant had a Harassment/Discrimination Policy in effect in September, 2015. **Ex. 2**, 12:19 – 13:11; **Exhibit 4**, Harassment / Discrimination Policy Training Acknowledgment Form and Harassment and Discrimination Policy (Depo. Ex. 64).

5. Defendant's harassment/discrimination policy is intended to ensure compliance with employment laws. **Ex. 2**, 15:16-20; 16:4-9.

6. Under Defendant's policy, "Harassment" includes "any verbal, physical, or visual conduct that discriminated against any person or groups of people based on their … sex" and includes conduct that "interferes with a person's work performance, creates a hostile work environment, or diminishes the dignity of any person." **Ex. 4**, ¶6.1.1.

7. Under Defendant's policy, "Sexual Harassment" includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when … conduct interferes with work or creates an intimidating, hostile, or offensive work environment." **Ex. 4**, ¶6.1.2.

8. Under Defendant's policy, "Hostile Work Environment includes comments or conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating hostile or offensive work environment on the basis of their … sex." **Ex. 4**, ¶6.1.3.

9. On September 12, 2015, Plaintiff reported concerns about co-worker Richardson to two hourly team leads and a Production Supervisor, who in turn notified a Value Stream Supervisor. **Ex. 1**, ¶46.

10. On September 12, 2015, HR Manager Simone Clifford was also notified of Plaintiff's reported concerns regarding Tony Richardson. **Ex. 1**, ¶47.

11. Plaintiff's complaints against Richardson included pictures she was shown in the locker room, comments Richardson made to her, and Richardson touching her. **Ex. 2**, 40:12-23.

12. Richardson's comments to Plaintiff violated Defendant's sexual harassment policy. **Ex. 2**, 41:5-7; 69:3-11.

13. On September 14, 2015, Defendant issued Tony Richardson a Level 3 Written Warning. **Ex. 1**, ¶48; **Ex. 2**, 38:24 – 39:4; **Exhibit 5:** Corrective Action (Depo. Exhibit 21).

14. HR Manager Clifford issued the Level 3 Written Warning to Richardson. **Ex. 2**, 38:24 – 39:4; 41:19-22.

15. As HR Manger, Clifford was the highest-ranking human resources employee at the facility Plaintiff worked at. **Exhibit 10:** Clifford Deposition, 6:16-17; 8:25 - 9:5; 9:18-25.

16. Clifford determined the Richardson's conduct violated Defendant's sexual harassment policy. **Ex. 10**, 53:16-19.

17. Under Defendant's progressive discipline policy, an employee may receive a Level 1, Level 2, or Level 3 write-up. **Ex. 2**, 23:9-23; 24:2-5. **Exhibit 6**: Kansas City Progressive Corrective Action policy; *see* **Ex. 5** (Hourly Corrective Action Form showing various levels)**.**

18. A Level 3 written warning is supposed to "remain active" for nine months. **Ex. 2**, 24:2-12.

19. An "active" written warning is supposed to preclude an employee from switching jobs at his or her request. **Ex. 2**, 24:16-21; 25:1-4.

20. Richardson understood that under the progressive disciplinary policy, if he had an active Level 3 Warning he was not supposed to obtain a transfer at his request for nine months. **Exhibit 7:** Richardson Deposition, 83:11-21.

21. Richardson became employed by Defendant on June 15, 2015. **Ex. 7**, 6:18 - 7:1; 10:8-15.

22. Richardson's initial rate of pay was $18.00 per hour, but he earned $18.50 per hour for working second shift. **Ex. 7**, 8:7-19.

23. Richardson was transferred from his original position to an RTE Packer position on September 1, 2015, and his rate of pay was reduced to $16.65 per hour. **Exhibit 8**: Emails (D000342; Richardson Deposition Ex. 57); *Pretrial Order*, ¶(2)(b)(59), Stipulations.

24. On September 9, 2015, Richardson transferred to Plaintiff's department and began working on Plaintiff's line. *Pretrial Order*, ¶(3)(b), Contentions of Defendant.

25. Richardson did not know his pay was reduced to $16.65 until more than one week after working with Plaintiff in the secondary pack position. **Ex. 7**, 21:14 – 22:5; 23:14-16.

26. When Richardson found out his pay had been reduced, he went and spoke with HR Manager Clifford to complain about his pay reduction. **Ex. 7**, 23:6-13.

27. In response, HR Manager Clifford offered Richardson a transfer to the warehouse, so he would make $17.50 per hour; this prompted him to request the transfer to the warehouse. **Ex. 7**, 23:6-13; 23:17-25; 61:20 - 62:1.

28. Richardson understood the sole reason he was being transferred to the warehouse was because he requested the transfer. **Ex. 7**, 24:24 – 25:1; 25:11-21; 26:9-11; 63:4-6.

29. Richardson received a raise for transferring to the warehouse. **Ex. 7**, 24:21-23.

30. Richardson was never told he was being transferred to the warehouse as a form of punishment, or that it was related to Plaintiff's complaints. **Ex. 7**, 26:3-11; 27:5-11; 62:16 - 63:3.

31. When HR Manager Clifford presented Richardson with the Level 3 Write-Up on September 14, 2015, the discussion focused on the picture he had given Kim Cobb; Richardson did not recall any discussion about Plaintiff. **Ex. 7**, 40:25 – 41:15.

32. When HR Manager Clifford presented Richardson with the Level 3 write-up on September 14, 2015, Richardson told Clifford he felt like a victim because Kim Cobb showed the naked pictures of him to other employees at work. **Ex. 7**, 40:3-19.

33. Clifford was sympathetic to Richardson. **Ex. 7**, 40:17-24.

34. Richardson was not aware the Level 3 Write-Up he received on September 14, 2015 had anything to do with Plaintiff. **Ex. 7**, 42:12-15.

35. On September 14, 2015, HR Manager Clifford told Plaintiff she should be written-up for reporting Richardson for sexual harassment. **Exhibit 9**: Plaintiff Depo. 108:4-16.

36. Clifford told Plaintiff she should be written-up because her complaint against Richardson made him a victim, which would not have happened if Plaintiff did not report him for sexual harassment. **Ex. 9**, 108:17-25.

37. Clifford told Plaintiff she should have texted her personally instead of reporting Richardson through the chain of command. **Ex. 9**, 108:25 - 109:2.

38. Clifford's comments made Plaintiff feel like she was being blamed for the way Richardson felt as a result of her sexual harassment complaint. **Ex. 9**, 109:3-7.

39. Clifford called Plaintiff into her office to tell her that it was her fault Richardson felt like a victim. **Ex. 9**, 121:3-16.

40. Under Defendant's policy, if an HR Manager threatens or intimidates a person because that person reported sexual harassment, that is retaliation. **Ex. 2**, 21:7-17.

41. Under Defendant's policy, if an employee is threatened with discipline because she reports sexual harassment, that is retaliation. **Ex. 2**, 21:21 – 22:6.

42. Plaintiff worked with Richardson after her complaints, including seeing him in the daily huddle and when he would bring her the tubs and lids that she was in charge of getting to the production floor. **Ex. 9**, 103:5-24: 104:3-5.

43. On September 25, 2015, Plaintiff reported to HR Manager Clifford that Richardson was "starting at [her] nonstop" during the daily huddles. **Ex. 9**, 115:16 – 116:4;118:14-23; **Exhibit 10:** Clifford Depo., 102:12-15; 109:4-7; **Exhibit 11**: Depo. Ex. 25.

44. Simone Clifford never followed up with Plaintiff regarding her September 25, 2015 complaint against Richardson. **Ex. 10,** 114:20 – 115:6; 115:14-18.

## AUTHORITIES AND ARGUMENT

The only claim relevant to this motion is Plaintiff's claim that she suffered sexual harassment, or a hostile work environment based on sex, in violation of 42 U.S.C. § 2000e-2(a). The elements Plaintiff must prove are: (1) she is female; (2) she was subjected to unwelcome conduct; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) there is a basis to impute liability to the employer. *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007). Plaintiff seeks partial summary judgment on elements 1 and 5. The remaining issues either depend on Plaintiff's credibility or otherwise involve fact issues for the jury. *See, e.g., McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) ("the severity and pervasiveness evaluation is particularly unsuited for summary judgment…."); *EEOC v. PVNF, L.L.C.*, 487 F.3d

790, 798 (10th Cir. 2007) ("the pervasiveness of the hostility is quintessentially a question of fact…."). Conversely, elements 1 and 5 are supported by undisputed facts.

I.  **Plaintiff is Female**

Plaintiff must prove she belongs to a protected class. *Jones*, 528 F. Supp. 2d at 1237. In this case, the alleged protected class is Plaintiff's sex; *i.e.*, she is female. This fact is undisputed. SOF ¶1. Thus, there is no reason to submit this issue to the jury and the Court should include such a finding in its order.

II. **Defendant Did Not Respond Adequately to Plaintiff's Complaint**

A plaintiff alleging discrimination under Title VII must show there is a basis to impute liability to the employer. *Jones*, 528 F. Supp. 2d at 1237. There are multiple ways to make this showing. *See, e.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998) (discussing three methods). One method is to show the employer was negligent. *Id.* Under the negligence method, the plaintiff must prove that the employer knew or should have known of the harassment and failed to adequately respond. *Id.* The employer's response is only considered adequate if it was "proportional to the incident and reasonably calculated to end the harassment and prevent any future harassing behavior." *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1257 (10th Cir. 2003). Because Title VII prohibits retaliation in response to an employee opposing sexual harassment, *see* 42 U.S.C. § 2000e-3(a), an employer who retaliates in response to such a complaint should not be found to have responded adequately. Retaliation is not reasonably calculated to prevent future harassment; rather, it is designed to prevent future complaints.

In this case, Defendant's response was neither proportional nor reasonably calculated to prevent future harassment because HR Manager Clifford retaliated against Plaintiff and

disregarded policy in order to benefit the harasser. Such actions are not appropriate responses to sexual harassment complaints.

   a. **Favorable Treatment Toward Richardson**

During September, 2015, Defendant had a policy in place that prohibited harassment and discrimination. SOF ¶4. Regarding harassment, sexual harassment, and hostile work environments, the policy mirrored Title VII. SOF ¶¶6-8. This was not a coincidence. A primary reason Defendant had the policy was to promote compliance with employment laws. SOF ¶5.

On September 12, 2015, Plaintiff's sexual harassment complaint against Richardson was made and traveled up the chain of command until it reached HR Manager Simone Clifford. SOF ¶¶9-10. Clifford was the highest-ranking HR employee at the Kansas City facility. SOF ¶15. Both Clifford and Defendant's 30(b)(6) representative testified that Richardson's conduct toward Plaintiff, which included comments and touching, SOF ¶11, violated Defendant's sexual harassment policy. SOF ¶¶2-3; ¶12; ¶16. Accordingly, Clifford issued Richardson a Level 3 Written Warning. SOF ¶¶13-14. Such a warning is supposed to be a severe form of discipline.

A Level 3 Written Warning is the highest level of warning under Defendant's progressive discipline policy, SOF ¶17, and is supposed to remain active for nine months. SOF ¶18. If the write-up was enforced according to policy, Richardson should have been ineligible from obtaining a transfer or a raise at his request. SOF ¶¶19-20. But Defendant disregarded that aspect of the policy.

When Richardson started working for Defendant, he was making $18.50 per hour. SOF ¶¶21-22. When he was transferred to the secondary pack department (where he worked with Plaintiff), unbeknownst to him, his pay was reduced to $16.65 per hour. SOF ¶¶23-25. After he was disciplined as a result of Plaintiff's complaints against him, he found out he was being paid

9

less than he was prior to his first transfer (which had nothing to do with Plaintiff) and he went to discuss his pay cut with HR Manager Clifford. SOF ¶26. In violation of company policy, Clifford offered Richardson a transfer so he would receive a raise to $17.50 per hour. SOF ¶¶27. Despite Defendant's claim that Richardson was transferred as a form of punishment, his own understanding was that he was transferred solely because he complained about his pay and requested the transfer so he could earn more money. SOF ¶¶28-29. He was never told his transfer was supposed to be a form of punishment. SOF ¶30.

Defendant might have created an *appearance* of an adequate response by disciplining Richardson. But a write-up that is not enforced is meaningless. Punishment is designed to correct misbehavior, but it will only have the desired effect if it is enforced. While Richardson was punished on paper, in reality, he was rewarded for his misconduct by being offered a transfer and a raise in response to his complaint about his pay. Moreover, Richardson did not know he was punished for his conduct toward Plaintiff.

Richardson was not told that the write-up he received was because the company concluded he sexually harassed Plaintiff. SOF ¶34. The write-up form itself mentions the pictures he gave to Kim Cobb, but makes no mention of Plaintiff whatsoever. *See* Exhibit 5. Moreover, when Richardson received the write-up, there was no discussion about Plaintiff. SOF ¶31. It is impossible to prevent future harassment by a write-up if the employee receiving the write-up does not know it is for sexual comments and touching. *See* SOF ¶34. Richardson thought it was solely related to the naked pictures of himself he shared with Kim Cobb.

Based on the foregoing, Defendant took no action which was reasonably calculated to punish Richardson or deter him from sexually harassing other female employees in the future. He was rewarded with a transfer and a raise. That is not what Title VII mandates.

### b. Hostile Conduct Toward Plaintiff

When HR Manager Clifford issued Richardson a write-up for sharing naked pictures of himself with Kim Cobb, *see* Exhibit 5, Richardson told Clifford he felt like the "victim" in the situation. SOF ¶32. HR Manager Clifford then called Plaintiff into her office, SOF ¶39, and blamed her for the way Richardson felt. SOF ¶38. Clifford told Plaintiff she should be written-up, SOF ¶¶35-36, and told Plaintiff she should have disregarded the chain of command, and policy, by texting her concerns to Clifford instead of making the report. SOF ¶37. In its deposition, Defendant admitted that threatening or intimidating someone for reporting sexual harassment is retaliation under its policy. SOF ¶40-41. Retaliatory conduct that violates a company policy designed to ensure compliance with the law, SOF ¶5, should not be considered a "reasonable" step toward preventing and correcting discrimination. Neither is forcing the complainant to continue working with the harasser.

"Courts recognize the complainant's assignment to work in close proximity to harassers as a factor in assessing the reasonableness of the employer's remedial measures." *Hanna v. Boys and Girls Home and Family Services, Inc.*, 212 F.Supp.2d 1049, 1064 (N.D. Iowa 2002). Even though Clifford determined Richardson violated the company's discrimination policy toward Plaintiff, SOF ¶16, Plaintiff was forced to continue working with him. SOF ¶42. Moreover, Plaintiff made a second complaint against Richardson by texting Clifford that Richardson was intimidating her during the group huddle at the start of shift. SOF ¶43. But Clifford refused to address the second complaint. SOF ¶44. She may have responded that Richardson would be moving soon, *see* Exhibit 11, but Clifford knew Richardson was actually moving because he requested a raise and transfer. SOF ¶¶22-29. Ignoring Plaintiff's second complaint of harassment against Richardson was not reasonably calculated to stop harassment within the facility.

## CONCLUSION

Based on the foregoing, the Court should decide that as a matter of law, Defendant failed to respond adequately to Plaintiff's sexual harassment complaint against Richardson. Defendant has policies in place to ensure it complies with Title VII, but in this case, it ignored them. Defendant violated its own policy by threatening Plaintiff for reporting sexual harassment, and by disregarding the discipline it issued Richardson by allowing him to obtain a raise at his own request. While a policy violation might not necessarily equate to a violation of the law, surely when an employer disregards its own policies designed to prevent harassment in a way that is detrimental to the plaintiff and beneficial to the harasser, the employer has not acted reasonably. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully Submitted,

By: /s/ *Kenneth D. Kinney*

Kirk D. Holman,     MO #50715
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738; FAX: (816) 283-8739
Email: kholman@hslawllc.com

Kenneth D. Kinney,   MO #67435
RALSTON KINNEY, LLC
4717 Grand Avenue, Suite 250
Kansas City, Missouri 64112
Tel: (816) 298-0070; Fax: (816) 298-9455
Email: ken@rklawllc.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2017, a copy of the foregoing, with all referenced Exhibits, was filed with the Court via its electronic filing system and served on Defendant by emailing a copy to:

SHOOK, HARDY & BACON LLP
Carrie McAtee
cmcatee@shb.com

**ATTORNEY FOR DEFENDANT**

/s/ *Kenneth D. Kinney*
**ATTORNEY FOR PLAINTIFF**