IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

TONIA THOMPSON, )
        Plaintiff, )
)
v. ) Case No: 2:16-cv-02496-DDC-GLR
)
TYSON FOODS, INC. )
        Defendant. )

### DEFENDANT TYSON FOODS, INC.'S MEMORANDUM IN OPPOSITION OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Tyson Foods, Inc. ("Tyson"), by its attorneys hereby submits this Memorandum in Opposition to Plaintiff Tonia Thompson ("Plaintiff's") Motion for Partial Summary Judgment.

### INTRODUCTION

In her First Amended Complaint, Plaintiff raises one claim of sexual harassment and one claim of retaliation against Tyson. (Complaint, Counts I & II). To establish a prima facie case on her sexual harassment claim, Plaintiff must show that: "(1) that she is a member of a protected class; (2) that the conduct in question was unwelcome; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) a basis for imputing liability to the employer." *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007). Plaintiff moves for summary judgment under the first and fifth elements of her sexual harassment claim contending that she is female and that Tyson is liable for Mr. Richardson's harassment. (Doc. # 40, p. 1). Plaintiff does not move for summary judgment under her retaliation claim.

For the purposes of this Motion, Tyson does not dispute Plaintiff is a female. But Plaintiff has failed to establish there is a basis to impute liability to Tyson as a matter of law.

1

Under the negligence method, to establish an employer's liability for harassment, Plaintiff must show, among other things, that Tyson knew or should have known about the alleged harassment and failed to adequately address or remedy such conduct. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). Instead, the undisputed facts show that once Tyson knew of the harassment, it acted promptly in response to Plaintiff's complaint and Tyson's actions stopped the harassment. Tyson's reasonable actions in response to Plaintiff's complaint defeat her Motion for Summary Judgment.

Tyson suspects the true purpose of Plaintiff's Motion is not to prevail, but rather to induce Tyson to contend there are genuine issues of fact. Plaintiff would then undoubtedly argue in response to Tyson's concurrently pending Motion for Summary Judgment (Doc. # 37) that factual issues prevent the Motion's success. However, as more fully explained below, the material facts are undisputed and any remaining factual disputes are immaterial to the determination of this case as a matter of law.

**TYSON'S RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS[1]**

The material facts in this case are largely undisputed. This case is ripe for determination at the summary judgment stage. Tyson does not controvert the following 21 paragraphs from Plaintiff's Statement of Material Facts: ¶¶ 1-5, 7, 9-10, 12-16, 18, 21-24, 26, 32, 41, 43.[2] The remaining controverted facts are immaterial to the resolution of this case as they do not establish that Plaintiff is entitled to judgment as a matter of law.

6. Under Defendant's policy, "Harassment" includes "any verbal, physical, or visual

---

[1] Tyson incorporates by reference its Statement of Uncontroverted Material Facts from its Memorandum in Support of its Motion for Summary Judgment (Doc. # 38).

[2] These responses, and the responses that follow, are made only for the purposes of the present Motion for Summary Judgment. Tyson reserves the right to alter or amend its statements.

conduct that discriminated against any person or groups of people based on their ... sex" and includes conduct that "interferes with a person's work performance, creates a hostile work environment, or diminishes the dignity of any person."

**Response: Controverted, but Immaterial.** Plaintiff misquotes Paragraph 6.1.1 of Tyson's Harassment and Discrimination Policy. The policy defines "Harassment" to include "any verbal, physical, or visual conduct that discriminates against any person . . . ."

8. Under Defendant's policy, "Hostile Work Environment includes comments or conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating hostile or offensive work environment on the basis of their ... sex." (Doc. # 40-4)

**Response: Controverted, but Immaterial.** Plaintiff misquotes Paragraph 6.1.3 of Tyson's Harassment and Discrimination Policy. The policy states, "Hostile Work Environment includes comments or conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment on the basis of their . . . sex." (Doc. # 40-4)

11. Plaintiff's complaints against Richardson included pictures she was shown in the locker room, comments Richardson made to her, and Richardson touching her.

**Response: Controverted as incomplete, but Immaterial.** Plaintiff's only allegation of physical contact was that Mr. Richardson "bump[ed] up against me. He would reach over me and king of rub on the side of my breast." (Doc. # 38-1, Plaintiff's Depo., at 60:25-61:4). This allegation of physical contact was not contained in Plaintiff's written statement to Tyson. (*Id.*, at 61:11-16.)

17. Under Defendant's progressive discipline policy, an employee may receive a Level 1,

3

Level 2, or Level 3 write-up.

**Response: Controverted as incomplete, but Immaterial.** Tyson's Progressive Corrective Action Policy may involve up to five levels: verbal reminder, Level One Documented Reminder, Level Two Written Reminder, Level Three Final Warning, and Termination of Employment. (Doc. # 38-3, Erickson Depo., at 23:7-23, 24:16-21; Progressive Corrective Action Policy (Ex. 2 to Clifford Depo., Doc. # 38-4)).

19. An "active" written warning is supposed to preclude an employee from switching jobs at his or her request.

**Response: Controverted as incomplete, but Immaterial.** An active warning often precludes an employee from transferring jobs at his or her own request, but Tyson allows exceptions to be made. (Doc. # 38-3 Erickson Depo., at 24:13-25:4).

20. Richardson understood that under the progressive disciplinary policy, if he had an active Level 3 Warning he was not supposed to obtain a transfer at his request for nine months.

**Response: Controverted as incomplete, but Immaterial.** An active warning often precludes an employee from transferring jobs at his or her own request, but Tyson allows exceptions to be made. (Doc. # 38-3, Erickson Depo., at 24:13-25:4).

25. Richardson did not know his pay was reduced to $16.65 until more than one week after working with Plaintiff in the secondary pack position.

**Response: Controverted as unsupported, but Immaterial.** Mr. Richardson testified that he did not know the dates upon which his pay was changed. (Doc. # 38-8, Richardson Depo., at 22:13-16).

27. In response, HR Manager Clifford offered Richardson a transfer to the warehouse, so he would make $17.50 per hour; this prompted him to request the transfer to the warehouse.

4

**Response: Controverted as incomplete, but Immaterial.** Ms. Clifford transferred Mr. Richardson in response to Plaintiff's complaint so that Mr. Richardson would avoid all contact with Plaintiff. Ms. Clifford informed Mr. Richardson that he would be temporarily moved to a different area of Plaintiff's department pending permanent reassignment to a different department. (Doc. # 38-8, Richardson Depo., at 74:4-78:7; Richardson Training Acknowledgment Form (Doc. # 38-15); Richardson Final Warning (Doc. # 38-14)).

28. Richardson understood the sole reason he was being transferred to the warehouse was because he requested the transfer.

**Response: Controverted as incomplete, but Immaterial.** Mr. Richardson was informed he was being transferred to another department as a result of the final warning he was issued in connection with his conduct with Plaintiff. (Doc. # 38-8, Richardson Depo., at 74:20-75:6, 77:4-10).

29. Richardson received a raise for transferring to the warehouse.

**Response: Controverted as incomplete, but Immaterial.** After Plaintiff complained about Mr. Richardson's behavior, Tyson's focus was on immediately removing him from Plaintiff's vicinity. To accomplish that goal, Mr. Richardson was permanently transferred to an open position in the warehouse department. (Doc. # 38-4, Clifford Depo., 110:14-111:5). The warehouse position was the only available position that would move Mr. Richardson away from Plaintiff. (Doc. # 38-4, Clifford Depo., 120: 11-12). Positions at Tyson are assigned Grades, and each Grade mandates a specific rate of pay. The warehouse position was a Grade II position, whereas his previous position was a Grade I. (Doc. # 38-4, Clifford Depo., 119:18-23). Mr. Richardson received an increased rate of pay because he had to be paid in accordance with the rate associated with his new position. (Doc. # 38-3, Erickson Depo., 25:19-26:5, 67:14-17; Doc.

# 38-4, Clifford Depo., 119:16-20).

30. Richardson was never told he was being transferred to the warehouse as a form of punishment, or that it was related to Plaintiff's complaints.

**Response: Controverted, but Immaterial.** Mr. Richardson was informed he was being transferred to another department as a result of the final warning he was issued in connection with his conduct with Plaintiff. (Doc. # 38-8, Richardson Depo., at 74:20-75:6, 77:4-10).

31. When HR Manager Clifford presented Richardson with the Level 3 Write-Up on September 14, 2015, the discussion focused on the picture he had given Kim Cobb; Richardson did not recall any discussion about Plaintiff.

**Response: Controverted as incomplete, but Immaterial.** Mr. Richardson understood the final warning was being issued in response to Plaintiff's concerns, he was informed to have no contact with Plaintiff, and that Plaintiff had reported a concern that Mr. Richardson made her uncomfortable. (Doc. # 38-8, Richardson Depo., at 74:20-75:15).

33. Clifford was sympathetic to Richardson.

**Response: Controverted, but Immaterial.** Ms. Clifford did not feel as though Mr. Richardson was victimized, nor did she feel badly for him. (Doc. # 38-4, Clifford Depo., 54:7-11, 52:20-55:1).

34. Richardson was not aware the Level 3 Write-Up he received on September 14, 2015 had anything to do with Plaintiff.

**Response: Controverted, but Immaterial.** Mr. Richardson was informed he was being transferred to another department as a result of the final warning he was issued in connection with his conduct with Plaintiff. (Doc. # 38-8, Richardson Depo., at 74:20-75:6, 77:4-10).

35. On September 14, 2015, HR Manager Clifford told Plaintiff she should be written-up

for reporting Richardson for sexual harassment.

**Response: Controverted, but Immaterial.** Ms. Clifford never suggested Plaintiff should be written up. (Doc. # 38-4, Clifford Depo., at 65:4-6).

36. Clifford told Plaintiff she should be written-up because her complaint against Richardson made him a victim, which would not have happened if Plaintiff did not report him for sexual harassment.

**Response: Controverted, but Immaterial.** Ms. Clifford never suggested Plaintiff should be written up. (Doc. # 38-4, Clifford Depo., at 65:4-6).

37. Clifford told Plaintiff she should have texted her personally instead of reporting Richardson through the chain of command.

**Response: Controverted as unsupported, but Immaterial.** Plaintiff testified that Ms. Clifford suggested, "[y]ou had my personal number, you could have called me at home and told me what was going on." No suggestion was made regarding a text message or ignoring the chain of command. (Doc. # 38-1, Plaintiff Depo., 108:17-109:2).

38. Clifford's comments made Plaintiff feel like she was being blamed for the way Richardson felt as a result of her sexual harassment complaint.

**Response: Controverted, but Immaterial.** Ms. Clifford did not feel as though Mr. Richardson was victimized, nor did she feel badly for him. (Doc. # 38-4, Clifford Depo., 54:7-11, 52:20-55:1).

39. Clifford called Plaintiff into her office to tell her that it was her fault Richardson felt like a victim.

**Response: Controverted, but Immaterial.** Ms. Clifford testified she did not feel as though Mr. Richardson was victimized, nor did she feel badly for him. (Doc. # 38-4, Clifford

7

Depo., 54:7-11, 52:20-55:1).

40. Under Defendant's policy, if an HR Manager threatens or intimidates a person because that person reported sexual harassment, that is retaliation.

**Response: Controverted as unsupported, but Immaterial.** Ms. Erickson testified if "an HR Manager intimidated or harassed somebody, just because they came in with a complaint of discrimination or harassment, would that constitute retaliation? If that's my sole, yeah, I would say so." Ms. Erickson's testimony did not mention threats. (Doc. # 38-3, Erickson Depo., 21:14-17).

42. Plaintiff worked with Richardson after her complaints, including seeing him in the daily huddle and when he would bring her the tubs and lids that she was in charge of getting to the production floor.

**Response: Controverted as incomplete, but Immaterial.** Initially, Mr. Richardson was temporarily moved to a different area of Plaintiff's department, the mezzanine, which is on a different level than where Plaintiff worked. (Doc. # 38-4, Clifford Depo., at 137:24-138:8; Doc. # 38-8, Richardson Depo., at 78:16-79:4; Doc. # 38-3, Erickson Depo., at 64:11-23; Doc. # 38-10, Ethics Advantage File Summary at Bates D000849). Ms. Clifford also finalized arrangements to permanently transfer Mr. Richardson to the warehouse — a different department in another area of the facility. (Doc. # 38-4, Clifford Depo., at 110:17-111:5; Doc. # 38-8, Richardson Depo., at 68:13-16, 79:5-8). Mr. Richardson began training on first shift in that position beginning on September 26, 2015 and was permanently transferred on or about October

3, 2015.³ (Doc. # 38-4, Clifford Depo., at 115:7-13, 119:11-15; Doc. # 38-3, Erickson Depo., at 64:24-25, 65:15-66:12; Doc. # 38-10, Ethics Advantage File Summary at Bates D000849-850).

44. Simone Clifford never followed up with Plaintiff regarding her September 25, 2015 complaint against Richardson.

**Response: Controverted as unsupported, but Immaterial.** Ms. Clifford followed up regarding Plaintiff's September 25, 2015 complaint by speaking with and permanently transferring Mr. Richardson. (Doc. # 38-4, Clifford Depo., 114:20-115:13).

## TYSON'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

Tyson additionally sets forth the following uncontroverted facts that show Plaintiff is not entitled to judgment as a matter of law.

1. Upon Plaintiff's report of Mr. Richardson's behavior, Tyson immediately commenced an investigation and determined Plaintiff's complaint was substantiated. (Doc. # 38-4, Clifford Depo., at 33:15-35:2, 122:16-123:12, 180:14-16).

2. When Mr. Richardson returned to work on September 14, 2015, Ms. Clifford issued Mr. Richardson a Level 3 Final Warning with a one-day suspension. (Doc. # 38-4, Clifford Depo., at 93:9-16; Richardson Final Warning (Ex. 21 to Clifford Depo.); Doc. # 38-8, Richardson Depo., at 74:23-76:21).

3. Ms. Clifford also advised Mr. Richardson that he would be temporarily moved to a different area of Plaintiff's department pending permanent reassignment to a different department. (Doc. # 38-8, Richardson Depo., at 76:22-78:21; Richardson Final Warning (Ex. 21 to Clifford Depo.)).

---

³ Mr. Richardson remained on first shift in the warehouse until May 2016, at which time he began working second shift in the warehouse. (Doc. # 38-8, Richardson Depo. at 65:1-11, 65:21-25, 79:9-15).

4. Mr. Richardson was temporarily moved to a different area of Plaintiff's department, the mezzanine, which is on a different level than where Plaintiff worked. (Doc. # 38-4, Clifford Depo., at 137:24-138:8; Doc. # 38-8, Richardson Depo., at 78:16-79:4; Doc. # 38-3, Erickson Depo., at 64:11-23; Doc. # 38-10 Ethics Advantage File Summary at Bates D000849).

5. After Plaintiff's second complaint on September 25, 2015, Ms. Clifford finalized arrangements to permanently transfer Mr. Richardson to the warehouse — a different department in another area of the facility. (Doc. # 38-4, Clifford Depo., at 110:17-111:5; Doc. # 38-8, Richardson Depo., at 68:13-16, 79:5-8). The warehouse position was the only available position that would move Mr. Richardson away from Plaintiff. (Doc. # 38-4, Clifford Depo., at 120: 11-12). Mr. Richardson began training on first shift in that position on September 26, 2015 and was permanently transferred on or about October 3, 2015. (Doc. # 38-4, Clifford Depo., at 115:7-13, 119:11-15; Doc. # 38-3, Erickson Depo., at 64:24-25, 65:15-66:12; Doc. # 38-10, Ethics Advantage File Summary at Bates D000849-850).

6. Positions at Tyson are assigned Grades, and each Grade mandates a specific rate of pay. The warehouse position was a Grade II position, whereas Mr. Richardson's previous position was a Grade I. (Doc. # 38-4, Clifford Depo., at 119:18-23). Mr. Richardson received an increased rate of pay because he had to be paid in accordance with the rate associated with his new position. (Doc. # 38-3, Erickson Depo., at 25:19-26:5, 67:14-17; Doc. # 38-4, Clifford Depo., at 119:16-20).

7. The sexually harassing conduct Mr. Richardson engaged in toward Plaintiff was limited to his conduct on September 9, 10, and 11, 2015. (Doc. # 38-1, Plaintiff Depo., at 88:7-12).

8. As of the time Plaintiff reported Mr. Richardson's conduct to a supervisor, Mr.

Richardson stopped sexually harassing Plaintiff. (Doc. # 38-1, Plaintiff Depo., at 105:17-21).

## **ARGUMENT AND AUTHORITIES**[4]

I.  **Standard of Review**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler*, 144 F.3d at 670).

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no

---

[4] Tyson incorporates by reference its Argument and Authorities from its Memorandum in Support of its Motion for Summary Judgment (Doc. # 38).

probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

While Tyson bears the burden of proof on its concurrently pending Motion for Summary Judgment (Doc. # 37), Plaintiff bears the burden of proof on the present Motion.

## II. Tyson Adequately Addressed or Remedied the Alleged Harassment[5]

An employer's liability for allowing a sexually hostile work environment after it is reported arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment. *See Adler*, 144 F.3d at 673 (a plaintiff "must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."). The "touchstone" for measuring an employer's response to sexual harassment is reasonableness. *Id.* at 675-676. Key factors in determining the reasonableness of an employer's response are the promptness and effectiveness of any action. *Id.* at 676.

The Tenth Circuit recognizes that "[i]t is not always possible for an employer to completely eliminate offensive behavior, and thus the effectiveness inquiry looks to whether the 'remedial and preventative action was reasonably calculated to end the harassment.'" *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1245 (10th Cir. 2001) (quoting *Adler*, 144 F.3d at 676). In this regard, "an employer is not required to terminate an employee upon its conclusion that the employee has engaged in sexual harassment." *Turrentine v. United Parcel Service, Inc.*, 645 F.

---

[5] Tyson refers to Plaintiff's Statement of Material Facts in its Argument and Authorities as (Plaintiff's SOF ¶__) and its Statement of Additional Uncontroverted Material Facts as (SOF ¶__).

12

Supp. 2d 976, 984 (D. Kan. 2009) (citing *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1258 (10th Cir. 2003)) ("[I]f we required employers to . . . impose excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination."). Rather, an employer is only required to respond in a manner that is reasonably calculated to end the harassment. *Adler*, 144 F.3d at 676.

Plaintiff asserts Tyson's response was inadequate because Tyson "retaliated against Plaintiff and disregarded policy in order to benefit the harasser." (Doc. # 40, pp. 8-9). However, Plaintiff cannot establish as a matter of law that Tyson's response was inadequate. To the contrary, as explained more fully in Tyson's Memorandum in Support of its Motion for Summary Judgment (Doc. # 38), the record establishes as a matter of law that Tyson's response was prompt, adequate, and effective. As a result, Plaintiff's Motion should be denied.

    A.    **Tyson Reasonably Responded to Plaintiff's Complaints**

Plaintiff first reported her concerns regarding Mr. Richardson to management on Saturday, September 12, 2015. (Plaintiff's SOF ¶¶ 9-10). Tyson immediately commenced an investigation and determined Plaintiff's complaint was substantiated. (Plaintiff's SOF ¶ 16, SOF ¶ 1). As a result, Tyson disciplined Mr. Richardson, issuing him a Level 3 Final Warning with a one-day suspension. (Plaintiff's SOF ¶¶ 13-14, SOF ¶ 2). Mr. Richardson was temporarily moved to a different area of Plaintiff's department pending permanent reassignment to a different department altogether. (SOF ¶¶ 3-4). Plaintiff reported a second concern regarding Mr. Richardson on September 25, 2015. (Plaintiff's SOF ¶ 43). In response to this complaint, Tyson immediately effectuated Mr. Richardson's permanent transfer to the warehouse, where he began training on first shift the very next day. (SOF ¶ 5).

In the Tenth Circuit, an employer's response to harassing behavior is adequate when it results in a stoppage of the behavior. Such a stoppage "evidences effectiveness" as the

13

"reasonableness of an employer response is measured by its ability to stop the harassment from the person disciplined." *Adler*, 144 F.3d at 676. In *Adler*, the Court found that the employer's responses were prompt and effective as "the stoppage [of the harassing behavior] shows [the employer's responses] were reasonably calculated to end the harassment." *Id.* at 677.

Similarly, in *MacKenzie v. City & County of Denver*, the plaintiff complained to her employer that her supervisor had subjected her to a hostile work environment. 414 F.3d 1266, 1270 (10th Cir. 2005). The employer responded by immediately counseling the supervisor and requiring him to apologize to the plaintiff. *Id.* Affirming the district court's grant of summary judgment, the Tenth Circuit held that the employer's response was "prompt, adequate and effective as a matter of law" based on the undisputed fact that the supervisor never again made inappropriate comments. *Id.* at 1281; *see also Glover v. NMC Homecare, Inc.,* 13 Fed. Appx. 896, 903 (10th Cir. 2001) (affirming summary judgment where employer immediately investigated and effectively stopped the harassing conduct toward the plaintiff); *Turrentine*, 645 F. Supp. 2d at 985 (holding that the employer could not be liable for harassment where its response was effective causing the alleged harassment of the plaintiff to cease); *Hollis v. Acoustic Sounds, Inc.*, No. 13- 1083-JWL, 2014 WL 806190, at *5-6 (D. Kan. Feb. 28, 2014) (holding that the employer could not be held liable for harassment where the plaintiff's complaint of harassment had the effect of stopping the issues about which she complained).

In this case, Tyson's prompt, corrective action taken in response to Plaintiff's report resulted in a stoppage of the sexually harassing behavior. (SOF ¶¶ 6-7). As a result, under *Adler* and its progeny, Tyson's response to Plaintiff's complaints was appropriate as a matter of law.

Instead of responding to the fact that Tyson's actions were effective at stopping the harassment and thus reasonable as a matter of law, Plaintiff makes purely factual arguments

challenging Tyson's methods of stopping the harassment. Plaintiff asserts Tyson rewarded Mr. Richardson for his misconduct by offering him a transfer and a raise. (Doc. # 40, pp. 9-10). This statement is not supported by the facts. After Plaintiff complained about Mr. Richardson's behavior, Tyson's focus was on immediately removing him from Plaintiff's vicinity. (SOF ¶ 3). To accomplish that goal, Mr. Richardson was permanently transferred to an open position in the warehouse department. (SOF ¶ 5). The warehouse position was the only available position that would move Mr. Richardson away from Plaintiff. (SOF ¶ 5). Positions at Tyson are assigned Grades, and each Grade mandates a specific rate of pay. The warehouse position was a Grade II position, whereas his previous position was a Grade I. (SOF ¶ 6). Mr. Richardson only received an increased rate of pay because he had to be paid in accordance with the rate associated with his new position. (SOF ¶ 6).

Further, even if Plaintiff was correct that Mr. Richardson was given a promotion and a raise, she fails to cite a single case or legal authority to support her argument that this method is prohibited. Instead, courts have determined that the opposite is true, holding "the law does not require that investigations into sexual harassment complaints be perfect." *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997); *see also Adler*, 144 F.3d at 676 (approving of and adopting *Knabe*). Instead, an employer's response is reasonable if it is "reasonably calculated to end the harassment." *Adler*, 144 F.3d at 677. When an employer's method of response if effective at stopping the harassment, it is reasonable as a matter of law. *See id.*; *see also MacKenzie*, 414 F.3d at 1270; *Glover,* 13 Fed. Appx. at 903; *Hollis*, 2014 WL 806190, at *5-6; *Turrentine*, 645 F. Supp. 2d at 985.

While it may have been preferable to transfer Mr. Richardson to a lower paying position, the law does not require it. Tyson acted promptly in response to Plaintiff's complaint and

transferred Mr. Richardson to the only open, alternative position. (SOF ¶¶ 1-5). Tyson's response stopped the harassment. (SOF ¶¶ 6-7). As a result, Plaintiff's Motion for Summary Judgment should be denied.

### B. Tyson did not Retaliate against Plaintiff

Plaintiff next contends that Tyson responded to her complaints with retaliation, and thus Tyson did not act reasonably. (Doc. # 40, p. 11). Plaintiff alleges she was retaliated against when Ms. Clifford blamed her for the way Mr. Richardson felt, suggested Plaintiff should have reported the harassment differently, and said she should write Plaintiff up. (*Id.*). But courts in this district have held that there is no retaliation even where managers are berating, intimidating or critical, or subject the plaintiff to uncomfortable or distressing situations. *Turrentine,* 645 F. Supp. 2d at 991 (hostile and intimidating comments made by management were not materially adverse); *Winn v. K.C. Rehabilitation Hosp., Inc.,* No. 13–2423–DDC, 2015 WL 6804045, at *25-26 (D. Kan. Nov. 5, 2015) (negative treatment and comments about the plaintiff's lawsuit not sufficiently adverse to support retaliation claim) (citing *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998) (explaining that "unnecessary derogatory comments" are not in themselves materially adverse employment actions)); *Nyanjom v. HawkerBeechcraft Corp.,* No. 12-1461-JAR, 2015 WL 3397934, at *18-19 (D. Kan. May 26, 2015) (allegations that employer conducted intimidating meetings and subjected the plaintiff to verbal abuse and insults, among other things, were not materially adverse); *Sifuentes v. United Parcel Serv., Inc.*, No. 10-2178-RDR, 2012 WL 5907385, at *12 (D. Kan. Nov. 26, 2012) ("extremely angry comments by a supervisor have not been considered sufficient to constitute a materially adverse action."). Plaintiff fails to cite any sources to support her position that Tyson's alleged actions amounted to retaliation as a matter of law.

Further, unrealized threats of disciplinary action cannot constitute retaliation under Tenth Circuit law. *See Dye v. Moniz*, 672 F. App'x 836, 840 (10th Cir. 2016) (threat of performance improvement plan, among other alleged actions, did not amount to materially adverse action); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (noting that the Tenth Circuit has "never expressly held that an unrealized threat of termination, without more, constitutes an adverse employment action"); *Cuenca v. Univ. of Kansas*, 265 F. Supp. 2d 1191, 1209 (D. Kan. 2003), *aff'd*, 101 F. App'x 782 (10th Cir. 2004) (threats of disciplinary action or termination are not adverse employment actions). Even if Ms. Clifford threatened to write Plaintiff up, it is undisputed that no write up occurred. As a result, neither the alleged threatened write up nor the alleged comments from Ms. Clifford rise to the level of retaliation.

Finally, Plaintiff argues that Tyson's response to her complaints was insufficient as she was forced to continue working with Mr. Richardson. Plaintiff relies on *Hanna v. Boys & Girls Home & Family Servs., Inc.*, 212 F. Supp. 2d 1049 (N.D. Iowa 2002) for the proposition that working in "close proximity to harassers [i]s a factor in assessing the reasonableness of the employer's remedial measures." *Hanna*, 212 F. Supp. 2d at 1064. But in *Hanna* the plaintiff made multiple requests to be transferred to a different shift, other than the one the alleged harasser worked. *Id.* The plaintiff's employer denied each of these requests. *Id.* In this case, the undisputed facts show Mr. Richardson was immediately transferred to a different area of Plaintiff's department pending permanent reassignment to a different department. (SOF ¶¶ 1-4). After Plaintiff's second report on September 25, 2015, Tyson immediately effectuated Mr. Richardson's permanent transfer to the warehouse, where he began the very next day. (Plaintiff's SOF ¶ 43, SOF ¶ 5). After this final transfer was effectuated, the sexually harassing behavior stopped. (SOF ¶¶ 6-7). Thus, as a matter of law, Tyson's response was reasonable. *See e.g.,*

*Adler*, 144 F.3d at 676. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## III. CONCLUSION

It is Plaintiff's burden to establish as a matter of law that Tyson did not act reasonably in responding to Plaintiff's complaints. Plaintiff failed to do so. The undisputed material facts instead show that Tyson acted promptly by transferring the harasser and effectively stopping the harassment. Thus, for the foregoing authority and arguments, Tyson respectfully requests that Plaintiff's Motion for Summary Judgment be denied.

Respectfully submitted by:

Date: September 1, 2017

SHOOK, HARDY & BACON L.L.P.

By: /s/ Mark C. Tatum
Mark C. Tatum, KS # 19137
Jennifer R. Varon, D. Kan. # 78698

2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
Email: mtatum@shb.com

ATTORNEYS FOR TYSON FOODS, INC.

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 1, 2017, a copy of the foregoing document and all exhibits referenced therein were served via the court's electronic case filing system on the following:

**RALSTON KINNEY, LLC**
Kenneth D. Kinney
4717 Grand Avenue, Suite 250
Kansas City, MO 64112
Tel: (816) 298-0070
Fax: (816) 298-9455
Email: ken@rklawllc.com

**HOLMAN SCHIAVONE, LLC**
Kirk D. Holman
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
Email: kholman@hslawllc.com

ATTORNEY FOR PLAINTIFF

                                                /s/ Mark C. Tatum
                                          ATTORNEY FOR DEFENDANT