## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TONIA THOMPSON,

        **Plaintiff,**

v.

        Case No. 16-2496-DDC

TYSON FOODS, INC.,

        **Defendant.**

_____

## MEMORANDUM AND ORDER

Title VII aims, in part, to end sexual harassment in the workplace by imposing liability on employers who fail to respond to sexual harassment complaints or retaliate against those who report harassment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986); 42 U.S.C. § 2000e-3(a). But when considering whether to impose liability on an employer, the court must be mindful of "the victim's rights, the employer's rights, and the alleged harasser's rights." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 677 (10th Cir. 1998). Here, plaintiff Tonia Thompson claims defendant Tyson Foods, Inc. has failed to respond to her complaints about sexual harassment and has retaliated against her for complaining about harassment.

This matter comes before the court on four motions. Defendant moves for summary judgment against both plaintiff's hostile work environment claim (Count I) and her retaliation claim (Count II) (Doc. 37). Plaintiff moves for partial summary judgment on her hostile work environment claim (Doc. 39). Plaintiff also moves to supplement her motion and Opposition to defendant's Motion for Summary Judgment to include an additional episode of alleged

harassment on September 8, 2017 (Doc. 51).  And last, defendant moves to correct its Reply brief to its Motion for Summary Judgment (Doc. 53).

The court grants plaintiff's Motion to Supplement and defendant's Motion to Amend.  As for the parties' motions for summary judgment, the court grants them in part and denies them in part.  The court holds that a jury should decide the outcome of plaintiff's hostile work environment claim.  The court also holds that a jury should decide the outcome of plaintiff's retaliation claim, except for plaintiff's reliance on defendant's warning to plaintiff for taking an unauthorized extended lunch break.  And last, the court holds that plaintiff is a member of a legally recognized protected class because she is a woman.  The court explains the rationale for its rulings, below.

## I.      Motion to Supplement her Summary Judgment Motion and Opposition

As part of the pending summary judgment motions, plaintiff asks the court to consider a new incident between Anthony Richardson, the alleged sexual harasser, and plaintiff that purportedly occurred on September 8, 2017.  This episode allegedly occurred after plaintiff filed her Motion for Summary Judgment and her Opposition to defendant's Motion for Summary Judgment.  On September 8, plaintiff alleges that Mr. Richardson walked up behind her and started rubbing her shoulders without her consent.  Plaintiff asks the court to consider this new incident as evidence supporting her hostile work environment claim, which alleges that defendant failed to respond adequately to an earlier complaint of harassment that plaintiff made in September 2015.  *See Adler*, 144 F.3d at 673 (explaining that plaintiff, to impute liability on an employer under Title VII for a hostile work environment claim, must establish that defendant responded inadequately to a report of harassment by a co-worker).

Defendant argues that the court should disregard the new evidence. It gives three reasons why the court should do so: (1) the September 8 incident was not included in the Pretrial Order; (2) plaintiff has failed to exhaust her administrative remedies for the September 8 incident; and (3) the incident has no relevance to defendant's or plaintiff's Motions for Summary Judgment. The court addresses these arguments, in turn, below.

### A.    Effect of the Pretrial Order

"Claims or theories that are not included in the pretrial order usually are waived." *Leathers v. Leathers*, 856 F.3d 729, 760 (10th Cir. 2017) (citation omitted). But "'a pretrial order should be liberally construed to cover any of the legal or factual theories that might be embraced by its language.'" *Id.* (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000)). Courts should follow this rule particularly when the Pretrial Order states the parties' allegations in general terms. *Id.* at 760–61.

Defendant asserts that *Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269 (D. Kan. 2007), addressed a similar situation. In *Sunderman*, plaintiff asserted a Title VII retaliation claim, which requires plaintiff to show that defendant retaliated against him because he reported or opposed discrimination. *Id.* at 1277. Plaintiff had alleged in the Pretrial Order that he had reported discrimination just once—when he filed a complaint with the Kansas Human Rights Commission in November 2002. *Id.* at 1278. After the court entered the Pretrial Order, plaintiff attempted to assert that he also reported discrimination another time—when he complained to defendant's human resource department as early as March 11, 2002. *Id.* Judge Robinson refused to consider the new allegation because plaintiff had not asserted it in the Pretrial Order where he *specifically* had identified the occasion he had reported discrimination. *Id.*

Judge Robinson explained that the *Sunderman* facts differed from other Tenth Circuit cases holding that a court should "liberally construe[]" a pretrial order "to cover any of the legal and factual theories that might be embraced by its language." *Id.* In contrast, Judge Robinson explained, the *Sunderman* Pretrial Order required a "'more strict[] constru[ction]'" because the Order "'ha[d] been refined over time, properly drawn, and drafted with substantial specificity.'" *Id.* (quoting *Koch*, 203 F.3d at 1220–21).

In contrast, the Pretrial Order here generally describes why defendant has failed to respond adequately to plaintiff's complaints of harassment. Plaintiff's factual contentions provide, in relevant part, "Plaintiff has continued to be exposed to [Mr.] Richardson through her employment with Tyson . . . . [Mr. Richardson] has engaged in conduct [after defendant transferred him] that is intimidating to Plaintiff, which Plaintiff has reported to management." Doc. 41 at 11. This allegation does not specifically reference the occasions when Mr. Richardson had intimidated plaintiff. Now, plaintiff alleges Mr. Richardson came into her work area, rubbed her shoulders, and made plaintiff uncomfortable. This interaction allegedly occurred after the court entered the Pretrial Order, after plaintiff filed her Motion for Summary Judgment, and after she filed her Opposition to defendant's motion. Under these circumstances and liberally construing plaintiff's allegations in the Pretrial Order, *Leathers*, 856 F.3d at 760, the court concludes that the Pretrial Order encompasses the September 8 incident that plaintiff alleges here.

**B.  Exhaustion of Remedies**

Defendant next argues that the court cannot consider the September 8 incident because plaintiff has not complained about the incident to the Equal Employment Opportunity Commission ("EEOC"). "Federal courts lack jurisdiction over Title VII claims that were not

previously covered in a claim presented to the [EEOC]." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)).[1]

Plaintiff argues that she need not present this new incident to the EEOC because she merely intends to use it as evidence to support her hostile work environment claim. Incidents of earlier harassment that plaintiff did not exhaust administratively "may constitute relevant background evidence" in a suit for a later act of harassment. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely [EEOC] charge is the legal equivalent of a discriminatory act which occurred before [Congress passed Title VII]. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history with no legal consequences.").

The Tenth Circuit has explained that acts of harassment occurring after harassment complained of in a Title VII suit may constitute relevant background evidence even though plaintiff never brought the subsequent harassing act to the EEOC's attention. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (recognizing that subsequent, unexhausted acts of retaliation may provide evidence that an earlier, administratively exhausted act was retaliatory). While plaintiff here argues that the new episode is germane to her hostile work environment claim—and not her retaliation claim—the court finds *Potter* persuasive. Based on it, the court concludes that the Tenth Circuit also would find unexhausted episodes of later harassment can constitute background evidence of a hostile work environment.

---

[1] In the Tenth Circuit, some uncertainty exists whether the exhaustion requirement is jurisdictional or a condition precedent. *See Wickware v. Manville*, 676 F. App'x 753, 767 n.4 (10th Cir. 2017) (observing that recent case law creates doubt whether exhausting administrative remedies is jurisdictional). But this distinction only matters when an employer waives or forfeits the exhaustion requirement. *Id.* Because defendant has not waived or forfeited the issue, the court declines to address this distinction here.

Importantly, later acts of harassment can show that an employer's response was not reasonable, thus making this evidence relevant. *See Adler*, 144 F.3d at 676 ("Repeat[ed] [harassing] conduct may show the unreasonableness of prior responses."). And considering this unexhausted episode to decide the pending summary judgment motions will not offend the policy justifications that require exhaustion as a predicate to suit in federal court, *i.e.*: (1) to give notice to the employer that a violation may have occurred so that it can address the incident voluntarily; and (2) to allow the EEOC to defuse the situation. *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017) (citation omitted). Here, plaintiff does not intend to litigate the reasonableness of defendant's response to the September 8 incident. That is, plaintiff does not contend in this lawsuit that defendant failed to respond adequately to plaintiff's complaint about the September 8 incident. So, notice is not an issue because, at least in this suit, defendant need not show that it addressed this incident reasonably, or even at all. Instead, plaintiff merely asks the court to consider the September 8 incident as evidence that defendant's response to the original episodes of harassment in 2015 was inadequate. This means, in turn, that there is no situation for the EEOC to defuse because no current dispute exists about defendant's response to the September 8 episode. The court thus finds that plaintiff need not exhaust this claim to utilize it as evidence about the effectiveness of defendant's response to her reported harassment.

## C.     Materiality of New Incident

Last, defendant contends that the court should refuse to consider the September 8 incident because it is legally immaterial. It cites *Atkins v. Southwestern Bell Telephone Co.*, 137 F. App'x 115 (10th Cir. 2005), for support.

In *Atkins*, plaintiff brought a hostile work environment claim under Title VII. *Id.* at 117. Defendant moved for summary judgment, arguing that its response was reasonable because the

summary judgment facts showed that it reasonably responded to the first reported instance of harassment and plaintiff never complained of any other problems during the ensuing two years. *Id.* at 117–18. The district court and Tenth Circuit agreed that defendant's response to plaintiff's complaint was reasonable as a matter of law because defendant had received no other complaints about the alleged harasser, the harasser denied the allegations, and defendant, nevertheless, counseled the harasser about the employer's sexual harassment policy, instructed him to follow it, and told plaintiff to report any further problems. *Id.* Because plaintiff never complained of harassment again for two years, defendant had no knowledge of any further harassment that would have warranted harsher action against the alleged harasser. *Id.* at 118; *see also Adler*, 144 F.3d at 676 ("The employer is, of course, obliged to respond to any repeat [harassing] conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective."). So, defendant had no way of knowing that its original response had failed to stop the harasser. *Atkins*, 137 F. App'x at 118.

Here, defendant argues that plaintiff's new allegation similarly cannot help plaintiff survive its Motion for Summary Judgment. But *Atkins* does not stand for the proposition that a court cannot consider at summary judgment a reported instance of sexual harassment two years after the original incident. In fact, it holds the opposite. The Circuit considered the later episode of sexual harassment when it affirmed the district court's decision granting summary judgment to defendant. *Id.* at 118. Indeed, the court must take all of the circumstances into account to determine if a response is reasonable. *See Adler*, 144 F.3d at 676 (explaining that the "reasonableness" of an employer's response turns on many factors). The court thus rejects defendant's argument that the September 8 incident is legally immaterial. The court will

consider plaintiff's evidence about the events on September 8 when deciding the pending summary judgement motions.

## II.     Motion to Amend Defendant's Reply

Defendant asks the court for leave to amend its Reply supporting its Motion for Summary Judgment.  In its Reply, defendant argues that the court should not consider Mr. Richardson's alleged harassment of another female employee and an episode on June 23, 2017 when Mr. Richardson allegedly intimidated plaintiff.  Doc. 52 at 42–44.  It argues that the court should not consider this evidence because, among other reasons, plaintiff failed to disclose it to defendant before the close of discovery.  *Id.* at 44.  But, defendant explains, its current counsel recently learned that plaintiff had disclosed this evidence to defendant's previous counsel.  So, defendant asks the court to allow it to amend its reply to withdraw this argument.[2]  Plaintiff does not contest this motion.  The court thus grants it.

## III.    Undisputed Facts

The following facts are uncontroverted or, where controverted, are stated in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *The Parties*

Defendant Tyson Foods, Inc. is a producer of fresh and cooked chicken, beef, and pork products.  Plaintiff Tonia Thompson became defendant's employee in 2014 when defendant bought Hillshire Brands Company—the company who originally employed plaintiff.  Plaintiff currently works for defendant as a Production Packer at its Kansas City, Kansas plant.  Through her job duties, plaintiff checks packaging, identifies material quality defects, and fixes those defects.

---

[2]      Defendant still asserts its other arguments, which the court addresses below.

### *Defendant's Employment Practices*

Two of defendant's employment practices are involved here. First, defendant employs Team Leads. Team Leads are hourly employees who assist supervisors with running the production line. While Team Leads have no power to hire, fire, or discipline employees, they tell production line employees where to work, help fix broken machines, keep track of schedules, help resolve employee disputes, handle paperwork, recommend discipline, and coach other employees.

The second practice is defendant's discipline system. Defendant divides its discipline system into different tiers. The first tier is a verbal warning where a supervisor and an employee discuss an issue the employee is having. No adverse consequences arise from a verbal warning. The next tier is a Level 1 warning. This is a "documented reminder" that remains "active" in an employee's file for three months. This means an employee cannot request a transfer during the three months the warning is active. The next tier is a Level 2 warning, which is a written warning that remains active for six months. Above Level 2—predictably—is a Level 3 warning. A Level 3 warning remains active for nine months and also produces a one-day suspension. The last tier is termination.

### *The Alleged Harassment*

On June 10, 2015, defendant hired Anthony Richardson. He began training on plaintiff's production line on September 9, 2015. That day, Mr. Richardson made sexually explicit comments to plaintiff and rubbed the side of her breast. Plaintiff reported this conduct to Dejuana Stallings, a Team Lead, but Ms. Stallings did not inform anyone else of the concern that plaintiff had expressed to her.

The next day, September 10, Mr. Richardson told plaintiff that he gave Kim Cobb, a fellow employee, some nude photographs to show plaintiff. He also made more sexually explicit comments, invaded her personal space, and acted jealous anytime she spoke with another male co-worker. Plaintiff also reported this conduct to Ms. Stallings, who asked another Team Lead, Jun Penn, to speak with plaintiff. When Mr. Penn spoke with plaintiff and offered to speak to Mr. Richardson about her complaints, plaintiff declined. Plaintiff explained that she hoped that Mr. Richardson would "get the hint." Based on this discussion, Mr. Penn did not speak with Mr. Richardson that day about the harassment.

On September 11, Mr. Richardson again acted jealous when plaintiff spoke with other male co-workers and made more sexually explicit comments. And, in the locker room after plaintiff's shift, Ms. Cobb showed the nude photographs of Mr. Richardson to several employees, including plaintiff.

### Defendant's Response

At the beginning of her next shift, on September 12, 2015, plaintiff reported Mr. Richardson's conduct to one of defendant's managers—Marcus Alexander. Mr. Alexander alerted his supervisor, Nathan Pease, who in turn called the facility's Human Resources Manager, Simone Clifford. Mr. Pease interviewed plaintiff and secured a written statement from Mr. Richardson that day. Immediately after Mr. Richardson supplied the written statement, defendant suspended him for one day without pay, pending a full investigation. Defendant's management also interviewed Ms. Stallings, Mr. Penn, and the other employees who saw the nude pictures in the locker room.

When Mr. Richardson returned to work on September 14, 2015, Ms. Clifford issued a Level 3 warning to him. During the meeting where she informed Mr. Richardson of the Level 3

warning, Ms. Clifford also reviewed defendant's sexual harassment policy. Defendant then temporarily moved Mr. Richardson to a different part of plaintiff's department. And about two weeks later, on October 3, 2015, defendant permanently moved Mr. Richardson to the warehouse—a different department in another part of defendant's Kansas City facility. Defendant also conducted facility-wide training on its harassment policy.

On September 25, 2015—about one week before defendant moved Mr. Richardson to a different job in the warehouse—Mr. Richardson stared at plaintiff in a way that made her feel uncomfortable. Plaintiff reported this episode to Ms. Clifford. After defendant had transferred Mr. Richardson to the warehouse, Mr. Richardson continued to intimidate plaintiff whenever he took supplies from the warehouse to the production line area. And whenever plaintiff walked in Mr. Richardson's direction, Mr. Richardson made exaggerated, sarcastic gestures to get out of her way. On June 23, 2017, Mr. Richardson came into the production line area and walked in circles around plaintiff.[3] But he never touched or made any more inappropriate comments to plaintiff until September 8, 2017, when he rubbed her shoulders without her consent.[4]

---

[3] Defendant urges the court to ignore this evidence. Defendant argues that plaintiff has failed to exhaust this claim administratively and that the incident exceeds the scope of the Pretrial Order. The court considers this incident as evidence of the reasonableness of defendant's response to plaintiff's complaints for the same reason it concluded plaintiff could raise the September 8 incident without presenting it to the EEOC. *See supra*, Part I.B. The court also concludes that this incident falls within the scope of the Pretrial Order. While the Pretrial Order does not address this incident specifically, it does allege, "After [Mr.] Richardson received a transfer . . . he continued to come into Plaintiff's work area. He has engaged in conduct that is intimidating to Plaintiff . . . ." Doc. 41 at 11; *see also Leathers*, 856 F.3d at 760–61 ("[A] pretrial order should be liberally construed to cover any of the legal or factual theories that might be embraced by its language. In particular, we have construed pretrial orders most liberally when the orders state the parties' claims in general terms." (internal citations and quotation marks omitted)). The June 23 incident is within the scope of plaintiff's contention that Mr. Richardson came into plaintiff's work area and intimidated her. Because the Pretrial Order encompasses the June 23 incident, the court considers it.

[4] Plaintiff argues that the court should consider Mr. Richardson's alleged harassment of another co-worker after defendant transferred him. But even liberally construing the Pretrial Order, the court concludes that this harassment exceeds the scope of the Pretrial Order. The Pretrial Order never alleges that Mr. Richardson harassed another woman; indeed, it never even mentions her. *See Sunderman*, 520 F. Supp. 2d at 1278 (refusing to consider an allegation to which the Pretrial Order never even alluded).

### *Alleged Retaliation*

As explained above, plaintiff reported Mr. Richardson's conduct to a manager on September 12, 2015. On September 14, Ms. Clifford spoke to plaintiff about her complaint. Ms. Clifford berated plaintiff for reporting Mr. Richardson's conduct and threatened to write her up or fire her. On October 2, 2015, plaintiff filed a Charge of Discrimination with the EEOC. It alleged that Mr. Richardson sexually harassed plaintiff. And it alleged that defendant had failed to respond to the harassment and, instead, had blamed her for any discomfort Mr. Richardson felt. Defendant received notice of this Charge on October 15, 2015. Eight days later, on October 23, a manager verbally reprimanded plaintiff for a work error she had made. Ms. Clifford and others in defendant's Human Resources department initially thought about issuing plaintiff a written warning or terminating her employment but, in the end, did not impose any formal discipline on plaintiff for her work error.

Shortly after this incident, Ms. Clifford issued two warnings to plaintiff for conduct that occurred before plaintiff complained about harassment. On May 12, 2015, defendant suspended plaintiff because she lied on company documents by claiming that she had performed metal detection checks on food products the day before. On September 4, 2015, a manager gave plaintiff a verbal reminder about her end of shift responsibilities that she had neglected to complete on September 1. Ms. Clifford did not issue plaintiff any formal warning for either incident until October 26, 2015. On that date, Ms. Clifford issued plaintiff a Level 3 warning for the May 11 incident—when she claimed falsely that she had performed metal detection checks— and a Documented Conversation warning for the September 1 incident.

On February 2, 2016, defendant gave plaintiff a Level 2 warning for failing to use the correct cardstock.

On April 18, 2016, a supervisor could not locate plaintiff shortly before lunch was called. Various supervisors looked for her, but could not find her. Henry Smith, one of defendant's supervisors, issued a Level 3 warning to plaintiff for taking an unauthorized extended lunch break. When Mr. Smith discussed the extended lunch break with plaintiff, she protested and explained that she had gone to the locker room to put on a jacket, used the restroom, and that defendant had called lunch while she was doing these things.

Plaintiff filed a second EEOC discrimination charge on July 14, 2016. Generally, it alleged that defendant was retaliating against plaintiff for reporting sexual harassment. Then, on October 10, 2016, defendant issued plaintiff a Level 1 warning for failing to wear safety glasses on the production floor. When Ms. Clifford heard about this infraction, Ms. Clifford bemoaned a "missed opportunity." Plaintiff has filed no other EEOC charges.

### The Content of Plaintiff's EEOC Charges

As noted above, plaintiff filed two EEOC charges. The first charge, submitted on October 2, 2015, claims that Mr. Richardson sexually harassed her and that defendant failed to punish him for his conduct. This charge also claimed that defendant's Human Resource Division blamed plaintiff for any discomfort Mr. Richardson experienced and, indeed, had rewarded Mr. Richardson. The EEOC issued a Notice of Right to Sue on this charge on April 20, 2016.

Plaintiff filed her second charge on July 14, 2016. In it, plaintiff claims that defendant was retaliating against her for filing her first charge. This charge mentions plaintiff's October 23, 2015, verbal reprimand, an incident in February 2016 where defendant forced her to interact with Mr. Richardson, the April 18, 2016, warning for taking an unauthorized extended lunch break, and defendant's failure to promote her as quickly as others in her department. The EEOC issued a Notice of Right to Sue on this charge on August 3, 2016.

## IV.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  To demonstrate that specific facts present a genuine dispute for trial, "the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits

incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and its entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). The court must treat each motion separately; simply because the court denies one motion does not obligate the court to grant the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## V.     Analysis

In this suit, plaintiff brings two claims. Count I alleges that defendant incurs liability under Title VII because defendant created a hostile work environment. Count II alleges that defendant incurs liability under Title VII because defendant retaliated against plaintiff for reporting discrimination. Defendant's Motion for Summary Judgment asks the court to enter summary judgment against both claims. Plaintiff's Motion for Summary Judgment asks the court to enter partial summary judgment on some aspects of her hostile work environment claim,

as explained more specifically later in this Order.  Plaintiff does not move for summary judgment on her retaliation claim.  The court addresses plaintiff's two claims and the parties' arguments supporting their motions, below.

### A.    Hostile Work Environment Claim

Under Title VII, an employer incurs liability for an employee's harassment when it is sufficiently severe or pervasive that a reasonable person would find the work environment hostile or abusive and the employee, in fact, perceived it to be so.  *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (citations omitted).  And plaintiff must be a member of a protected group.  *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).  There are two theories for which Title VII imposes liability on an employer under a hostile work environment claim.  *Debord*, 737 F.3d at 650.  First, an employer incurs liability when it "knew or should have known about the harassment but failed to stop it."  *Id.*  Second, an employer is vicariously liable if one of its supervisors has harassed an employee.  *Id.*  Plaintiff is not pursuing the second theory here because the only alleged harasser, Mr. Richardson, is a co-worker, not a supervisor.

Here, the parties' arguments focus on whether defendant "knew or should have known about the harassment but failed to stop it."  Defendant argues that no reasonable jury could conclude from admissible evidence in the summary judgment record that defendant inadequately addressed the harassment after it learned about it on September 12, 2015.  Plaintiff disagrees, responding that the summary judgment facts, when viewed in her favor, establish that defendant knew about the harassment on September 9, 2015, and that defendant's response was inadequate as a matter of law.

In her Motion for Summary Judgment, plaintiff argues that the summary judgment facts establish that defendant's response was inadequate as a matter of law.[5]  Plaintiff also argues that she is a member of a protected class because she is a woman. Defendant agrees that plaintiff is a member of a protected class but responds that the summary judgment facts establish the converse proposition advanced by plaintiff's motion, *i.e.*, that defendant's response was adequate as a matter of law.  Because plaintiff's gender is undisputed, the court grants the part of plaintiff's motion asking the court to recognize her membership in a protected class.  *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the [summary judgment] motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.").

The court first addresses the arguments raised by defendant's motion.  Then, the court turns to plaintiff's motion and addresses whether the summary judgment facts governing her motion, *i.e.*, the facts viewed in the light most favorable to defendant, establish that defendant's response was inadequate.

> **1.      Do the summary judgment facts, viewed in plaintiff's favor, establish that defendant's response to the alleged harassment was reasonable as a matter of law?**

In its Motion for Summary Judgment, defendant argues that the court should enter summary judgment against plaintiff's hostile work environment claim for two distinct reasons: first, defendant did not have knowledge of any reported harassment until September 12, 2015; and second, once defendant learned about the alleged harassment, it responded to it reasonably.

---

5        Plaintiff's motion concedes that the summary judgment facts governing *her* motion, when viewed in defendant's favor, establish that defendant learned about the harassment on September 12.

### a. When did defendant learn about Mr. Richardson's harassment?

For an employer to incur liability on a hostile work environment theory, the employer must have actual or constructive notice of the harassment creating the hostility. *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 755 (10th Cir. 2014). When a plaintiff reports actionable harassment to a management-level employee, defendant has actual knowledge of it. *Id.* Defendant argues that it did not have actual knowledge of the harassment until plaintiff reported it to her manager on September 12, 2015. Plaintiff contends that defendant received actual knowledge three days earlier—on September 9, 2015—when plaintiff told a Team Lead about Mr. Richardson's harassment.

*Adler v. Wal-Mart Stores, Inc.* informs the analysis of this dispute. In *Adler*, the Tenth Circuit considered whether the employing defendant had actual knowledge of harassment upon plaintiff reporting the harassment to her department manager and an immediate supervisor. 144 F.3d at 674. The immediate supervisor was an hourly employee who lacked authority to hire, fire, or discipline employees formally. *Id.* at 669. But this supervisor had some authority over plaintiff and her co-workers and reported directly to the department manager, who could hire, fire, and formally discipline employees. *Id.* at 674. The Tenth Circuit held that the immediate supervisor—the hourly employee—was a management-level employee because he had the title "supervisor," had some authority over plaintiff and her co-workers, and reported directly to the department manager. *Id.* The Circuit's analysis of this question never referenced the immediate supervisor's inability to hire, fire, or discipline other employees formally. *Id.*

Here, the summary judgment facts, viewed in plaintiff's favor, establish that defendant's Team Lead employees are management-level employees. While defendant's Team Leads did not have the title "supervisor," they had some authority over plaintiff and other employees. They

could tell other workers where to work, how long to work there, and when to take a break. They could handle disputes among co-workers and recommend discipline. Essentially, they functioned in a supervisor's role but just one with limited authority. While they lacked authority to hire, fire, or discipline other employees formally, these limitations do not, by themselves, control the determination whether they are a management-level employee. *See id.* The court concludes that a reasonable jury could conclude that defendant had knowledge of harassment when plaintiff informed Team Lead Dejuana Stallings on September 9, 2015, about Mr. Richardson's actions during that same day.[6]

### b. Was defendant's response to the alleged harassment adequate as a matter of law?

To avoid liability for a hostile work environment, defendant must show that its response was "'reasonably calculated to end the harassment.'" *Adler*, 144 F.3d at 676 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)). When making this determination, courts must balance victims' rights, employers' rights, and the alleged harassers' rights. *Id.* at 677. An employer responds reasonably when it promptly investigates the alleged harassment, proactively solicits complaints, changes the harasser's schedule, transfers the harasser to another work area, issues oral or written warnings, or reprimands the harasser. *Id.* at 676.

When evaluating whether an employer's response has discharged its duty to respond in a fashion "reasonably calculated to end the harassment," one important factor is the response's effectiveness. Initially, our Circuit had implied that stoppage of the harassment by the

---

[6] Plaintiff argues that defendant should have known that Mr. Richardson was a harasser before he started working with plaintiff because Mr. Richardson harassed another employee shortly before defendant transferred him to plaintiff's department. A defendant has constructive knowledge of harassment when it should have known the harasser had a tendency to harass others. *Kramer*, 743 F.3d at 756. But the evidence in the summary judgment record establishes that plaintiff was the first person to report her experience with Mr. Richardson. Defendant thus had no knowledge of Mr. Richardson's tendencies to harass before plaintiff reported him. *See id.* (holding that the summary judgment evidence established that an employer had no constructive knowledge of a harasser's tendencies because it lacked knowledge that he had harassed others in a fashion similar to the harassment claimed by plaintiff).

disciplined perpetrator evidences effectiveness. *Hirschfeld v. N.M. Corr. Dep't*, 916 F.2d 572, 578 (10th Cir. 1990). But eight years later, in *Adler*, the Circuit sharpened the discussion. It held, simply, "A stoppage of harassment shows effectiveness which in turn evidences such reasonable calculation." *Id.*

But the Circuit's analysis in *Adler* did not end with this observation. Instead, *Adler* emphasized that stoppage "is not the sole factor to be considered." *Id.* And thus, an employer's response to illegal harassment may be reasonable "even though the perpetrator might persist." *Id.* In cases involving a persistent perpetrator, the factors governing the reasonableness of the employer's calculated response to the harassment are: "[T]he timeliness of the plaintiff's complaint, whether the employer unduly delayed [its response to the reported harassment], and whether the response was proportional to the seriousness and frequency of the harassment." *Id.* Also, and to express it as the Seventh Circuit did, summary judgment isn't required against a harassment claim just because the harassment stopped. *Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1999) ("Just as an employer may escape liability even if harassment recurs despite its best efforts, so it can also be liable if the harassment fortuitously stops, but a jury deems its response to have fallen below the level of due care.").

In the current case, defendant argues that the court should grant summary judgment against plaintiff's harassment claim because, on the governing summary judgment facts, it is undisputed that Mr. Richardson's harassment of plaintiff ended. Thus, defendant says, this case is like *Adler v. Wal-Mart Stores* and it deserves the same outcome that Wal-Mart secured there—summary judgment against the harassment claim.

Were the summary judgment record as one sided as defendant's argument suggests, the court would agree and grant summary judgment against the harassment claims. But it is not.

For example, the summary judgment evidence shows that defendant suspended Mr. Richardson for sending nude photographs to Ms. Cobb—not for the harassment that plaintiff first reported. Defendant argues that the summary judgment facts show that it gave Mr. Richardson a written warning and suspended him after plaintiff told her manager about Mr. Richardson's behavior. But the written warning never explicitly references Mr. Richardson's inappropriate comments, jealous attitude, or unwanted touching; instead, the warning just references the photographs. Doc. 49-14 at 2. And Mr. Richardson testified in his deposition that defendant suspended him for sending nude photographs to his co-worker—not for his comments to plaintiff. Doc. 49-2 (Richardson Dep.) 39:15–40:2.

Likewise, a reasonable jury could conclude that the circumstances surrounding Mr. Richardson's transfer do not support the conclusion of a reasonable response. Defendant never told Mr. Richardson why it had moved him away from plaintiff's work area. In fact, Mr. Richardson testified that he requested a transfer to the warehouse after he discovered that warehouse workers earned more than production line workers did. Defendant argues that it transferred Mr. Richardson there because the warehouse position was the only available position. But an exchange between Ms. Clifford and plaintiff make this a disputed fact. In this exchange, which occurred after plaintiff reported the harassment, plaintiff asked Ms. Clifford if she could separate plaintiff and Mr. Richardson by transferring plaintiff. Ms. Clifford responded that the only available position was a position in the "RAW" side of the plant where the pay was lower. This statement undermines defendant's argument that it transferred Mr. Richardson to the only position that could accept a transfer. It provides a basis for a reasonable jury to find that defendant acted unreasonably when it awarded Mr. Richardson the position he wanted and already had requested.

Offering the plaintiff a lower paying job while allowing Mr. Richardson, the harasser, to move to a higher paying job presents a fact issue about the reasonableness of defendant's response. Plaintiff analogizes this situation to one the Ninth Circuit faced in *Intlekofer v. Turnage*, 973 F.2d 773 (9th Cir. 1992). In that case, the Ninth Circuit explained that an employer had not responded reasonably to harassment when it transferred the alleged victim to a less desirable position. *Id.* at 780 n.9. It reasoned that employers should not disrupt a victim's life as a response to harassment. *Id.* The Seventh Circuit echoed this sentiment when it noted, "A remedial measure that makes the victim of sexual harassment worse off is ineffective per se." *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990).

The court finds the reasoning of these cases persuasive. Defendant's decision to offer Mr. Richardson a better job when it knew that plaintiff was willing to move could permit a reasonable jury to conclude that defendant's response was unreasonable. A reasonable jury also could conclude that this remedial measure made plaintiff worse off because plaintiff showed a willingness to move but defendant only offered her a worse position while moving the harasser to a better position.

Also, the character of Ms. Clifford's response to plaintiff's harassment complaint could support a proper jury finding that defendant's response was unreasonable. The summary judgment facts, viewed in plaintiff's favor, establish that Ms. Clifford did not interview a witness to plaintiff's allegation that Mr. Richardson was staring at her during a meeting shortly after plaintiff reported his harassing conduct.[7] Ms. Clifford never spoke with plaintiff about Mr.

---

[7]        Defendant argues that Ms. Clifford followed up with the witness. Doc. 52 at 7. Defendant contends that plaintiff has failed to dispute this fact because she only cites evidence that impugns Ms. Clifford's credibility, citing *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000), to support the argument that a court cannot judge Ms. Clifford's credibility at summary judgment. Defendant misapprehends what the court is doing here. The court is not determining Ms. Clifford's credibility. By making this finding in the context of defendant's Motion for Summary Judgment, the court simply is asserting that a reasonable jury could find that Ms. Clifford's testimony about her

Richardson's comments to her when she followed up with plaintiff on September 14, 2015; she only spoke with plaintiff about the pictures. And last, Ms. Clifford created her official report of the harassment more than a month after plaintiff lodged the complaint and Ms. Clifford began investigating the claim.

All of these summary judgment facts—if ultimately accredited—could allow a reasonable jury to conclude that defendant's response was unreasonable. This is so even though the summary judgment record viewed in plaintiff's favor also contains some evidence that defendant responded reasonably. For instance, defendant reminded Mr. Richardson and the entire Kansas City plant about defendant's sexual harassment guidelines. *See Hoss v. Art Insts. Int'l-Kan. City, Inc.*, No. 13-2206-JTM, 2014 WL 3845134, at *5 (D. Kan. Aug. 5, 2014) (finding on summary judgment that an employer requiring its employees to attend harassment awareness training was evidence of a reasonable response to a report of harassment). Other evidence suggests defendant's management interviewed all relevant witnesses within four days of defendant learning about the harassment. *See Stewart v. Bd. of Comm'rs for Shawnee Cty., Kan.*, 216 F. Supp. 2d 1265, 1279 (D. Kan. 2002) (holding that an employer promptly responded to allegations of harassment when the employer started an investigation within a month of first learning about the first harassing incident). And the facts, taken in the most favorable light to plaintiff, could establish that Mr. Richardson did not touch plaintiff inappropriately or make inappropriate comments to plaintiff until two years after defendant transferred Mr. Richardson. *See Adler*, 144 F.3d at 676 (explaining that a stoppage of harassment "evidences" a reasonable response by an employer).

---

following up with the witness is not credible. Naturally, the court makes no determination whether Ms. Clifford remembers anything inaccurately.

The controlling summary judgment principles do not permit the court to reconcile these competing versions of the evidence. The court concludes that the admissible evidence produced by the parties can support a reasonable jury's finding that defendant failed to respond reasonably to plaintiff's harassment complaint. This conclusion prevents the court from deciding the case on summary judgment.

**2.      Do the summary judgment facts, viewed in defendant's favor, establish that defendant's response to the alleged harassment was inadequate as a matter of law?**

Plaintiff counters defendant's motion with one of her own. It argues that plaintiff deserves partial summary judgment because the admissible evidence in the summary judgment record, when viewed in defendant's favor, establishes that defendant's response was unreasonable. The court does not agree.

Viewed to favor defendant, the summary judgment record can support a reasonable finding that defendant's response was reasonable because Mr. Richardson did not harass plaintiff until September 8, 2017—nearly two years after plaintiff first complained about him and defendant transferred him. *See Atkins v. Sw. Bell Tele. Co.*, 137 F. App'x 115, 117–18 (10th Cir. 2005) (affirming summary judgment against a hostile work environment claim because an employer responded reasonably to an employee's report of harassment when it counseled the harasser on the sexual harassment policy and the employee never reported any more harassment until two years later). And a reasonable jury also could conclude that defendant's removal of Mr. Richardson from the plaintiff's workspace was a reasonable response to plaintiff's complaint because defendant focused on moving Mr. Richardson—the harasser—rather than plaintiff—the victim. *Cf. Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994) (finding an employer's response to harassment was unreasonable when it changed the victim's work schedule instead of the harasser's).

Plaintiff offers two arguments to support her assertion that defendant's response was unreasonable as a matter of law—even when viewing the summary judgment record in defendant's favor. These arguments are unpersuasive. First, plaintiff argues that Mr. Richardson did not understand that defendant was punishing him for his comments and harassing conduct when he received a written warning and suspension. But the summary judgment facts viewed in defendant's favor will not support that outcome as the only reasonable finding a jury could make. Mr. Richardson testified that he understood that defendant suspended him and gave him a written warning in response to plaintiff's complaints about him. Doc. 48 at 5; Doc. 38-8 (Richardson Dep.) 75:2–6. The court is mindful that Mr. Richardson testified differently earlier in his deposition—but a jury must decide which version of his testimony to accredit. The court cannot make that decision at summary judgment.

Similarly, plaintiff argues that Ms. Clifford acted hostilely towards her after she reported Mr. Richardson's behavior. The summary judgment evidence viewed in defendant's favor shows that Ms. Clifford denied feeling sorry for Mr. Richardson after plaintiff reported him for harassment. And Ms. Clifford claims that she never berated plaintiff for reporting Mr. Richardson. While plaintiff argues that Ms. Clifford failed to investigate subsequent harassment by Mr. Richardson, Ms. Clifford's deposition testimony contradicts this assertion. The court thus cannot conclude that summary judgment for plaintiff on her hostile work environment claim is appropriate. The court thus denies this aspect of her motion.

### B.    Retaliation

Count II of the Complaint alleges that defendant retaliated against plaintiff for complaining about harassment. An employer cannot retaliate against an employee who reports illegal harassment. 42 U.S.C. § 2000e-3(a).

Defendant moves for summary judgment against this claim and its arguments for this outcome fall into two categories. First, defendant argues that plaintiff has failed to exhaust her administrative remedies on certain episodes of alleged retaliation and thus, she cannot litigate those claims in this case. And second, defendant argues that no reasonable jury could conclude based on the admissible evidence in the summary judgment record that defendant retaliated against plaintiff for reporting Mr. Richardson's discrimination. The court discusses the exhaustion issue first. It then considers whether a reasonable jury could find that defendant retaliated against plaintiff.

### 1. Exhaustion

"Federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the Equal Employment Opportunity Commission ("EEOC")." [8] *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)). Defendant argues that plaintiff did not present three allegedly retaliatory acts to the EEOC and thus she has not exhausted her administrative remedies for those acts: (1) defendant's Level 2 warning to plaintiff on February 2, 2016; (2) defendant's written warning to plaintiff on October 10, 2016 (after plaintiff filed her second EEOC charge); and (3) two warnings issued to plaintiff on October 26, 2015, for conduct that occurred before plaintiff complained of harassment. Plaintiff concedes that she never presented (1) or (2) to the EEOC. But she argues that her EEOC charge filed on July 14, 2016, presented the third act to the EEOC. Defendant responds, arguing that the July 2016 charge failed to present this claim with requisite specificity.

To present a claim to the EEOC adequately and thus secure the right to sue on it in federal court, "the charge document must contain the general facts concerning the discriminatory

---

[8]    *See* n.1, *supra.*

actions later alleged in the legal claim." *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017) (citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). A charge's "general facts" must be "'sufficiently related to the claim made in the [lawsuit's Complaint] such that [the facts in the charge] would prompt an investigation of the claim'" presented by the lawsuit. *Id.* (quoting *U.P.S.*, 502 F.3d at 1186 (internal brackets omitted)) (holding that a charge encompassed a claim that defendant had terminated plaintiff's employment because plaintiff refused to give a supervisor sexual favors when it asserted the employee was "'subjected to sexual remarks'" and "that '[his supervisor] terminated his employment'" (internal brackets omitted) (quoting the charge form)).

The court finds *Perkins v. Federal Fruit & Produce Co., Inc.*, 945 F. Supp. 2d 1225 (D. Colo. 2013), persuasive. In *Perkins*, plaintiff's charge form specifically referenced seven episodes constituting the alleged retaliation. *Id.* at 1243. But at trial, plaintiff raised two new episodes of retaliation that the charge had not included. *Id.* at 1244. After the jury found for plaintiff, defendants moved to dismiss the case for lack of jurisdiction. *Id.* at 1229. Defendants argued that plaintiff had failed to exhaust his administrative remedies for certain retaliatory acts that he failed to identify specifically in his EEOC charges. *Id.* at 1244. As does the defendant here, the *Perkins* defendants likened the case to *Manning v. Blue Cross & Blue Shield of Kansas City*, 522 F. App'x 438 (10th Cir. 2013). In *Manning*, the Tenth Circuit concluded that plaintiffs had failed to exhaust their administrative remedies because their EEOC charges were too vague. *Id.* at 441. The charges "completely lacked factual specificity, failing even to describe the particular actions and practices" plaintiffs complained about in them. *Id.* The *Perkins* defendants argued that their situation was similar because the EEOC charge had failed to

describe the particular actions and practices that plaintiff referenced at trial. *Perkins*, 945 F. Supp. 2d at 1246.

But *Perkins* rejected defendants' argument. *Id.* It noted that the plaintiff's charge sufficiently described that defendants had retaliated against him "for opposing racial discrimination through a series of verbal and written complaints . . . that occurred during a particular time period . . . ." *Id.* The court explained that though the charge contained some omissions and inaccuracies, it "contained factual allegations that would have triggered an investigation into all of [plaintiff's complaints of retaliation] during the [period covered by the EEOC charge]." *Id.* And the court rejected defendants' argument that differences between the factual allegations of the charge and the facts argued at trial were prejudicial because the facts asserted at trial were related reasonably to the facts alleged in the EEOC charge. *Id.* at 1241.

The situation in this case is similar to *Perkins*. Defendant never argues that plaintiff's second charge failed to provide notice that plaintiff was asserting a retaliation claim. Indeed, defendant could make no such argument. Plaintiff's charge document specifically describes four episodes—including written and verbal warnings—that allegedly amount to retaliation by defendant. Instead, defendant argues that the EEOC charge did not put it on notice that plaintiff would include the October 26, 2015, warnings as retaliatory acts. But the factual detail that the charge form provides for the specific episodes of the alleged retaliation provides a sufficient starting point for defendant and the EEOC to investigate all of plaintiff's claims of retaliation. This includes the October 26, 2015, warnings. While plaintiff omitted this particular episode of alleged retaliation from her charge, it was related reasonably to the episodes she specifically referenced in it. Plaintiff thus has exhausted her administrative remedies for a retaliation claim that relies on the October 26, 2015, warnings.

### 2.     Merits

Next, defendant argues that it is entitled to summary judgment because the summary judgment facts cannot support a finding that defendant retaliated against plaintiff.

The parties agree that the *McDonnell Douglas* burden-shifting framework applies to evaluate plaintiff's claim.  Under this framework, to succeed on a claim proving an employer has retaliated against an employee for reporting discrimination, the employee must first establish "(1) 'that [she] engaged in protected opposition to discrimination,' (2) 'that a reasonable employee would have found the challenged action materially adverse,' and (3) 'that a causal connection exists between the protected activity and the materially adverse action.'" *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007)).

If the employee can establish all three requirements, the burden shifts to the employer to provide a "'legitimate, non-retaliatory rationale for the adverse employment action.  If the [employer] does so, the [employee] must show that the [employer's] proffered rationale is pretextual.'" *Id.* (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)).

Defendant does not contest that plaintiff engaged in protected activity when she complained about Mr. Richardson's conduct on September 9, 2015, and filed her EEOC charges on October 2, 2015, and July 14, 2016.  Indeed, all are protected activity.  *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected [activity] can range from filing formal charges to voicing informal complaints to superiors.").  Instead, defendant challenges whether admissible evidence exists that could support a reasonable finding that defendant took materially adverse actions because of plaintiff's protected activity.  Defendant also asserts that

no admissible evidence exists that could support a finding by a reasonable jury that defendant's reasons for its adverse actions are pretextual rather than legitimate.

Plaintiff argues that defendant did three things constituting materially adverse actions. First, plaintiff contends Ms. Clifford intimidated her and made threats towards plaintiff. Second, plaintiff argues that defendant retaliated when it issued warnings to plaintiff on October 26, 2015, for conduct that predated plaintiff's complaint with the EEOC. And last, plaintiff relies on defendant issuing a written warning to plaintiff for taking a 50 minute lunch break. The court discusses each of these actions below, and rules whether they can support a finding that defendant retaliated against plaintiff.

<b>a.    Ms. Clifford's Threats and Intimidation Toward Plaintiff</b>

Plaintiff argues that Ms. Clifford's threat and intimidation of plaintiff after she reported Mr. Richardson constitute retaliation. Ms. Clifford spoke with plaintiff two days after plaintiff complained about Mr. Richardson. In this conversation—under the admissible evidence that favors plaintiff—Ms. Clifford threatened to issue a written warning to plaintiff and berated her for reporting Mr. Richardson. Defendant argues that neither her threat nor her demeanor can constitute retaliation because unrealized threats and intimidation are not materially adverse employment actions. Doc. 38 at 33–34.

An employment action is "materially adverse" when it would dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). To satisfy the "materially adverse" requirement, plaintiff need not "prove some tangible, subjective psychological or monetary injury." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007). But plaintiff must show something more than "petty slights, minor annoyances, and simple lack of good manners . . . ." *Id.*

The Tenth Circuit has emphasized that this standard requires a careful and calibrated differentiation. On one hand, threats combined with actions that cause plaintiff to suffer economically and psychologically are materially adverse actions. *Id.* (holding that a reasonable jury could conclude that defendant took a materially adverse employment action by warning plaintiff "not to fight him" on the discrimination claim and following through on the warning by opposing plaintiff's application for unemployment benefits); *see also Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012) (holding that plaintiff's retaliation claim should have survived summary judgment when the summary judgment facts showed that defendant acted hostilely towards her, threatened her with reassignment, and fired her three months after she reported a co-worker for harassment). And repeated threats to issue a written warning to plaintiff—even if the threats prove to be empty ones—can constitute a materially adverse action. *Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp. 2d 1110, 1118 (D. Colo. 2013); *cf. Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1209 (D. Kan. 2003) ("'Unsubstantiated oral reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.'" (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998))), *aff'd*, 101 F. App'x 782 (10th Cir. 2004).

Here, the court concludes that a reasonable jury could find that Ms. Clifford's actions rose to the requisite level of materially adverse. The summary judgment record contains admissible evidence of episodes when defendant (through Ms. Clifford) took actions that would affect a reasonable person economically and psychologically. Specifically, Ms. Clifford issued written warnings to plaintiff after she complained of harassment for two incidents that had occurred *before* she complained. These warnings rendered plaintiff ineligible for a transfer for

nine months after defendant issued them. A reasonable jury could conclude that the threat combined with the written warnings could dissuade a reasonable employee from reporting discrimination.

This leaves the final element of plaintiff's prima facie case on her retaliation claim, *i.e.*, "a causal connection" between plaintiff's protected activity and the employer's materially adverse employment action. The court concludes that a causal connection between plaintiff's complaint about Mr. Richardson and Ms. Clifford's statements exists. A plaintiff establishes a causal connection between plaintiff's protected activity and the employer's materially adverse action when she shows that, but for the protected activity, defendant never would have taken the materially adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Here, the summary judgment facts are that Ms. Clifford told plaintiff that she should not have reported Mr. Richardson's conduct to plaintiff's superiors and threatened to issue plaintiff a written warning because plaintiff made such a report. A reasonable jury thus could conclude that Ms. Clifford would not have threatened plaintiff but for plaintiff's complaint to her superiors, and thus could conclude that plaintiff has established her prima facie case.

For the purposes of its motion, defendant provides no legitimate reason for Ms. Clifford's threat. The court thus denies defendant's motion based on Ms. Clifford's threat.

### b. Warnings about Conduct before Harassment Complaint

Plaintiff also argues that defendant retaliated against her by issuing warnings for conduct that had occurred before plaintiff reported Mr. Richardson's harassment. On October 26, 2015, Ms. Clifford issued two warnings to plaintiff for conduct that occurred months and weeks earlier, on May 11, 2015, and September 1, 2015. Defendant asserts three reasons prevent a reasonable jury from concluding that issuing these warnings was retaliatory. First, defendant argues that issuing a warning is not a materially adverse action. Next, defendant argues that no causal link

exists between plaintiff's protected activity and the warnings. And last, defendant argues that it had legitimate reasons for issuing these warnings. The court addresses these arguments in the next three subsections.

### i. Materially Adverse Action

Defendant argues that written warnings cannot constitute a materially adverse action. To support this argument, defendant cites a number of cases where the court granted summary judgment against retaliation claims when the summary judgment record showed the employer had issued warnings that did not affect the employee's employment in any way. Doc. 38 at 31–33 (citing, among other cases, *Olson v. Shawnee Cty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1206 (D. Kan. 2014) (holding that verbal and written reprimands were not materially adverse because they did not alter the conditions of plaintiff's employment)).

But the situation here is quite different because defendant's warnings changed plaintiff's employment condition. Specifically, the warnings prevented plaintiff from requesting a transfer while the warning remained active. The warnings in cases such as *Olson* did not affect plaintiff's employment condition similarly. *Id.* The summary judgment record thus provides a basis for a reasonable jury to conclude the warnings constituted a materially adverse action.

### ii. Causal Link

Defendant argues that plaintiff fails to come forward with admissible evidence capable of supporting a causal link between her protected activity and the October 26 warnings. Defendant notes that the conduct for which defendant warned her happened before plaintiff complained about sexual harassment.

A plaintiff can establish a causal link between protected activity and materially adverse action when the two occur close in time. *See Downs v. Jostens, Inc.*, 23 F. Supp. 3d 1332, 1338

(D. Kan. 2014) (holding that plaintiff produced sufficient evidence to deny summary judgment when the protected activity and the materially adverse action occurred within six weeks of each other). Here, the summary judgment facts establish that the protected activity—plaintiff filing her first EEOC charge—occurred on October 2, 2015. Defendant issued the written warnings three and a half weeks later on October 26, 2015. The two events occurred sufficiently close in time to establish a causal link.

Defendant acknowledges the temporal proximity of the warning and the charge, but contends that the two events happened in the wrong order. Namely, it contends that defendant disciplined plaintiff before she engaged in the protected activity. Doc. 38 at 36. Specifically, this argument asserts that defendant suspended plaintiff on May 12, 2015 for the May 11 incident and verbally warned her on September 4, 2015 for the September 1 incident. *Id.*

If these facts were undisputed facts, defendant's argument might prevail. *See Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1226 (10th Cir. 2016) (affirming summary judgment against an ADA retaliation claim because plaintiff could not establish a causal link when the materially adverse action occurred before plaintiff engaged in protected activity). But they are not undisputed facts. The summary judgment record contains admissible evidence showing when plaintiff and Ms. Clifford signed the warnings. *See* Docs. 49-16, 49-17. The dates of those signatures follow plaintiff's Charge of Discrimination, filed with the EEOC on October 2, 2015. This timeline contradicts defendant's factual premise and, in doing so, nullifies this theory. A reasonable jury could find for plaintiff on this question.

### iii.    Pretext

Having shown that she can establish a prima facie case, the burden shifts to defendant to assert a legitimate, non-retaliatory reason for the materially adverse action. *Hansen*, 844 F.3d at

925.  Defendant argues that it has done so.  Namely, defendant contends that it issued the warnings because Ms. Clifford discovered that plaintiff never had signed the written warnings for the May 11 and September 1 incidents when she was reviewing plaintiff's discipline record after plaintiff committed another infraction on October 23, 2015.  This constitutes a legitimate, non-retaliatory reason for the materially adverse action.  Thus, the burden shifts back to plaintiff to present evidence that defendant's reasons are unworthy of belief.  *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

Plaintiff can satisfy this responsibility "'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable [jury] could deem the employer's reason unworthy of credence.'"  *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013)).  "'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*,' and 'do not look to the plaintiff's subjective evaluation of the situation.'"  *Id.* (quoting *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011)).

The court holds that a reasonable jury could conclude that defendant's reasons are unworthy of belief.  That neither plaintiff nor Ms. Clifford signed her May 11 written warning until almost six months after the infraction is curious, particularly when the written warning follows a charge of discrimination by just three weeks.  Ms. Clifford testified in her deposition that she never had heard of a similar situation.  A reasonable jury could conclude that such a departure from normal operations is an inconsistency.  *See id.* (explaining that plaintiff can show pretext by demonstrating that defendant acted contrary to company practice).

Turning to the September 1 incident, plaintiff received a verbal warning when her supervisor discussed her mistake with her on September 4.  A reasonable jury could conclude

that issuing a written warning on October 26—after a supervisor already had discussed the mistake with plaintiff over a month earlier—was pretextual for the same reason. The court thus holds that a reasonable jury could conclude that defendant issued the October 26 warnings as retaliation for plaintiff's filing of an EEOC charge.

### c.     Written Warning for 50 Minute Lunch Break

The last act plaintiff claims was retaliatory is defendant issuing a written warning to plaintiff on April 18, 2016, for having taken a 50 minute lunch break. Defendant argues that no admissible evidence can support a reasonable finding that the lunch break warning was retaliatory. Defendant advances three principal reasons. First, defendant argues that the written warning was not a materially adverse action. Second, no causal link exists between plaintiff's protected activity and the materially adverse action. And last, defendant contends that it has produced legitimate reasons why it issued the warning.

The court holds that the lunch break warning constitutes a materially adverse action because defendant's warning affected plaintiff's employment conditions, much like the warnings defendant issued on October 26. *See supra*, Part III.B.2.b.i.

Turning to the causal link, as mentioned above, a plaintiff establishes a causal link when the materially adverse action occurs within several weeks of the protected activity. *Downs*, 23 F. Supp. 3d at 1338. Here, the warning and the protected activity are separated by six-and-a-half months, which, by itself, is not close enough in time to establish a causal link. *See Hanson v. Colo. Judicial Dep't*, 564 F. App'x 916, 920 (10th Cir. 2014) (affirming summary judgment against a retaliation claim because a "four-month period [between the protected activity and materially adverse action] is too protracted to permit an inference of retaliation, without more"). Because the materially adverse action and the protected activity did not occur in close temporal

proximity with each other, plaintiff must produce additional evidence to establish a basis for a reasonable causation finding. *McDonald v. City of Wichita, Kan.*, 156 F. Supp. 3d 1279, 1302 (D. Kan. 2016).

In such cases, evidence of pretext can establish the causal link. *Id.* But, as explained above, the court must "'examine the facts as they appear *to the person making the decision*,' and "'not look to the plaintiff's subjective evaluation of the situation.'" *DePaula*, 859 F.3d at 970 (quoting *C.R. Eng.*, 644 F.3d at 1044). Courts "do not ask 'whether the employer's proffered reasons were wise, fair or correct;' [courts] ask only 'whether the employer honestly believed those reasons and acted in good faith upon those beliefs.'" *Debord*, 737 F.3d at 655 (quoting *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011)).

Here, the summary judgment record contains no admissible evidence capable of supporting a finding of pretext. Particularly important to the court's decision is Ms. Clifford's and plaintiff's deposition testimony. Ms. Clifford testified that no one knew where plaintiff was shortly before lunch was called. Ms. Clifford testified that plaintiff's supervisors looked for her and could not find her. Because plaintiff's supervisors could not find her before lunch, Henry Smith, one of defendant's supervisors, issued the written warning. While plaintiff may have been in the bathroom before lunch, as she contends, plaintiff cannot direct the court to any admissible evidence that suggests Mr. Smith knew where she was before he issued the warning. To be sure, none of defendant's managers or HR personnel asked plaintiff where she was before lunch. But the court must look to whether the summary judgment facts show that *Mr. Smith* honestly believed that plaintiff was absent from the floor. Plaintiff's deposition testimony shows that plaintiff told Mr. Smith that she was in the locker room and bathroom *after* he issued the warning.

Plaintiff has failed to show any admissible that would support a reasonable jury's finding of a causal link between plaintiff's filing her EEOC charge and defendant issuing the lunch break warning. The court grants summary judgment against Count II's reliance on the lunch break warning.

## VI.    Conclusion

For the reasons explained above, the court grants defendant's Motion for Summary Judgment (Doc. 37) in part and denies it in part. The court grants the motion against plaintiff's claim that the lunch break warning constituted retaliation. The court otherwise denies defendant's Motion. The court also denies plaintiff's Motion for Summary Judgment (Doc. 39) in part and denies it in part. The court grants it with respect to plaintiff's request for summary judgment on the issue of whether she is a member of a protected class—female. *See* Fed. R. Civ. P. 56(g). The court otherwise denies her motion. And last, the court grants defendant's Motion to Amend its Reply (Doc. 53) and plaintiff's Motion to Supplement her Opposition (Doc. 51).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 37) is granted in part and denied in part, as recited in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc. 39) is granted in part and denied in part, as recited in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Supplement (Doc. 51) is granted.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Amend its Reply (Doc. 53) is granted.

**IT IS SO ORDERED.**

Dated this 5th day of February, 2018, at Topeka, Kansas.


                                        s/ Daniel D. Crabtree_____
                                        Daniel D. Crabtree
                                        United States District Judge